## JOHN J. ORTON, Complainant, Appellant,
### *vs.*
## DAVID KNAB, Defendant, Appellee.

APPEAL IN EQUITY FROM THE CIRCUIT COURT OF MILWAUKEE COUNTY.

The defendant executed a bond as surety, with Butler as principal, to one Schram, conditioned that B., within a given time, should convey by deed, the title, free of incumbrance. of certain real esfate, to the said S., and at the same time there was conveyed to the defendant, lots 7 and 8 to indemnify him as such surety ; and the deiendant also executed a bond to Butler, conditioned to convey lots 7 and 8 to Butler or his assigns on the performance of the conditions of the bond to S. S. afterwards assigned the bond of the defendant and Butler, to the complainant; and Butler assigned the defendant's bond to him, to the complainant, who cancels or offers to cancel the bond to Schram.

*Held,* that the defendant is bound to convey lots 7 and 8, to the complainant according to the conditions of the bond.

*Held,* also, that a bill to compel such a conveyance is the proper remedy, on the defendant being discharged from liability on his bond to Schram.

*Held,* also, that the defendant did not, by these transactions, become an equitable mortgagee of the lots 7 and 8, but a trustee holding the legal title, the direction of which was fixed by his bond to Butler, which he would be compelled specifically to execute.

Where a deed absolute on its face, is taken as security, equity will regared it as a mortgage, and a bill to redeem is a proper remedy; but if, upon taking such deed the grantee executes an agreement by which he covenants to convey, on being discharged from liability, a bill to enforce performance is a proper remedy.

In case of a written defeasance, or in case where there ir proof of the fact that the conveyauce was as a security merely, without a written defeasance, a bill to redeem can be maintained. But where the parties have, by their own written agreement, directed the disposition of the title, after the security is no longer necessary, the remedy is by bill to enforce such agreement.

A resulting trust is one which the law implies from the transactions of the parties whereby it is forced upon the notice of the court, and its recognition impelled : But " the court never presumes a trust but in case of absolute necessity."

An express trust resting in parol cannnot be enforced or recognized in a court of equity.

When the facts which tend to show a resulting trust in a person, also show a contrivance of such person to hinder, delay or defraud his creditors, no trust can arise or result from such fraudulent transactions, or be regarded in a court of eqnity.

Where a bill is defective for want of parties, it ought not to be dismissed, but the case should be ordered to stand over for new parties to be brought in.

JUNE TERM 1854.

Orton
vs.
Knab.

John J. Orton, the complainant in the court below, filed his bill of complaint in this cause, against David Knab, in the usual form of a bill for specific performance, setting forth in substance, that David Knab, on the 22d day of July, 1848, executed to one Tertullus D. Butler, his certain bond, conditioned to convey to said Butler, his heirs, &c., a certain tract of land, described as lots 7 and 8 in section 9, town 7, range 22, except three acres theretofore sold, (said Knab being or pretending to be seized of said land,) by a deed free and clear of all incumbrance, through said Knab, on the fulfillment of certain conditions in said bond mentioned, setting forth the bond at length in the bill; the conditions were in substance, that Butler should save Knab harmless from, and perform the conditions of, a certain bond, executed by Knab and Butler to one Joseph B. Schram, on the 22d day of July, 1848; conditioned under a certain penalty, to convey to Schram certain tracts of land in said last bond mentioned, and clear the same from incumbrance. The bond first above mentioned, was duly acknowledged on the 22d day of July, 1848, and duly assigned, for a valuable consideration, to John J. Orton, the appellant, on the 22d day of February, 1851; which assignment was duly acknowledged on the 13th day of March, 1851, and said bond and assignment both recorded in the register's office of Milwaukee county, on the 15th day of March, 1851; that the bond to Schram as aforesaid, set forth at length in said bill, was duly asssigned for a valuable consideration to John J. Orton, the appellant, by Schram, on the first day of August, 1851; that the assignment

38

was duly acknowledged; that the conditions of the bond to Schram have been fully complied with, in part by said Orton; and that Orton as assignee of the last mentioned bond to Schram, holds the said Butler and Knab as discharged from the obligations of the same; that upon the performance of the conditions in the bond to Schram, Butler, or his assigns, have become entitled to a deed of conveyance of the lands described in the bond first above mentioned, to Butler from Knab; and that by virtue of the assignment of the bond first above mentioned to Orton, he has become and is entitled to a deed of convey ance from Knab, of the lands in said bond described; that Knab has been often requested by Orton to convey to him said lands in said bond mentioned, as assignee of the bond; that Knab declined and refused to convey the land according to the conditions of his bond to Butler; and praying the court to compel the specific performance by Knab of his bond, first above set forth, by the decree of the court, and that Knab execute to Orton a deed of the lands in the bond mentioned, according to the conditions thereof.

On the 15th day of September, 1851, the answer of David Knab was filed, setting forth, in substance, that one Otis Hubbard inquired of him in June or July, 1848, if he would be afraid to become security for $1,000; that Butler, about three weeks after, informed Knab that Hubbard had sold to Schram certain lots; that Butler inquired of Knab if he would become security with him, Butler, to Schram, for the conveyance to Schram, free and clear, of certain lots, if he should be secured by the title to lots 7 and 8; that he consented to become such security to Schram;

June Term 1854.

Orton
vs.
Knab.

that Butler procured the papers, and that he and Butler went to Heminway's office, and Butler delivered to him a deed of lots 7 and 8 ; that he received the deed of lots 7 and 8 from Butler, executed by one Cyrus D. Davis and wife, except three acres pre viously conveyed, July 20, 1843 ; that he executed the bond to Butler and the bond to Schram as security with Butler, on receiving the deed, at the request of Butler ; that he believes he executed the bond first set forth in the bill, and if so, said bond is one of the bonds signed in Heminway's office ; that after sign ing the bonds he left the office ; that he believes But ler executed to Schram the bond in the bill secondly set forth ; that the bonds were signed without being read ; that he supposed one of these bonds bound him to repay Schram the purchase money of certain lots, in case Hubbard should not acquire title, &c. ; and that he supposes the other bond obliged him, on being discharged from liability on the bond to Schram, to re-deed said lots 7 and 8 to Davis, or some other person, on being paid a reasonable compensation ; that he never had any agreement, &c., with Butler or Schram about receiving any part of the purchase money of the certain lots sold to Schram, or that a mortgage was to be executed ; that he did not receive any part of the purchase money.

That in the spring of 1851, he was informed that the bond first above set forth in the bill, was assigned to Orton as stated, and that he believes the bond secondly set forth in the bill was transferred as stated ; that he has been informed and believes that the conditions in the second bond have been wholly or in part performed or satisfied, by certain convey ances, &c. ; that he is advised and believes, that the

conditions of the bond in the bill last set forth, are in effect satisfied by the assignment of both bonds to complainant (Orton;) that at the time of execution of the bonds, he believed the legal title to said lots 7 and 8, except three acres, vested in him by the delivery of the deed from Davis, &c., but never pretended to have any other interest than that vested in him by said deed, &c. ; that he is ready to abide the decree of said court, &c,

On the hearing in the court below, the complainant introduced in evidence, the bond of Knab to Butler, and the assignment thereof to him, the complainant, and also the bond of Butler and Knab to Schram, with the assignment thereof by Schram to the complainant.

On the part of the defendant Cyrus D. Davis was called as a witness, the substance of whose testimony is fully stated in the opinion. He also testified that some time after he executed the deed of lots 7 and 8 to Knab, he executed a quit claim deed of the same to George Smith, at the request of I. A. Lapham, administrator of the estate of Otis Hubbard, since deceased. Also, I. A. Lapham was produced, who testified that he was administrator of the estate of Otis Hubbard, deceased, and that he had in his possession certain notes against Tertullus D. Butler, belonging to the estate of Otis Hubbard, which, bearing different dates, amounting to some hundred dollars, he found among the papers of the deceased.

On the part of the complainant, John A. Messenger testified, that he knew, from the statement of Hubbard and other circumstances, that he was embarrassed when he came to Milwaukee; that he bought lands and took the title in the name of Botsford of

Chicago, and H. M. Hubbard of Milwaukee ; that he regulated the sales, and received the money ; that witness held property for him ; that he learned from H. that the reason for his taking title in the names of others, was, that there were large claims against him east, some in judgment, upon which any thing he might have in his own name, could be taken away. Witness gave his notes to H. for the property held by him, and felt in honor bound to deed to H. on receiving back his notes. He deeded lots 7 and 8 to Cyrus D. Davis, at Hubbard's instance and request. Also, Sylvester Pettibone testified, that H. told him he could hold no property in his own name, and that he took the title in the name of others, because he was involved east, and for the purpose of protecting it. He held no property in his own name.

Tertullus D. Butler was also called, who was objected to on the ground of interest, whereupon a release was executed and delivered, who testified at length in regard to the transactions between himself and Hubbard, the substance of which was that he supposed he owned lots 7 and 8 ; that he procured a deed of them to be executed to Knab, as security for signing the bond with the witness to Schram, and when the conditions of that bond should be satisfied, he, Knab, was to re-convey the lots to the witness. He sold his interest in the lots to the complainant. The bond of Knab to witness, was executed by Otis Hubbard's directions, and he had paid Hubbard for the lots ; the consideration was, a balance of accounts for board, cash, goods, wares and merchandize, &c.; the amount was about $2,000, and the account had run from 1844 to 1849. When the bond was executed to witness, it was arranged and perfectly under-

stood that he, witness, was to have the lots. Knab understood the contents of the bond. The consideration of the assignment of the bond, by witness to the complainant, was $2,100.

Francis Ripley testified that he was present when the deed from Davis, and the bonds were exchanged, and that he drew one or two copies before he could satisfy Knab, and that he executed the bonds with a full knowledge of their contents. He also witnessed the execution and took the acknowledgments of the bonds, &c.

There was also referred to, the record of a suit in equity then pending in the same court, of *Hubbard vs. Knab et. al.*, but it is unnecessary to insert any part of the same here.

After the hearing, the court below made a decree, dismissing the bill with costs, for want of parties, and without prejudice, from which the complainant appealed.

There were numerous points made by counsel on the argument of the cause in this court, but as they are stated and commented upon by the court in the opinion, it is not necessary to recapitulate them here.

*H. S. Orton* and *E. Mariner,* for the complainant.

*J. S. Brown* and *E. G. Ryan,* for the defendant.

*By the Court,* SMITH, J. This is a bill for specific performance of a contract for the conveyance of real estate. On the 22d day of July, A. D. 1848, the defendant executed to one Tertullus D. Butler, a bond conditioned to convey to said Butler, his heirs, &c., two certain tracts of land, described as lots 7 and 8, in section 9, town 7, range 22, (except three acres

theretofore sold,) the said Knab being seized thereof, free and clear of all incumbrances through him, upon the fulfillment of certain conditions in said bond mentioned; which conditions were, that said Butler should at his own proper costs, charges and expense, perform all and singular the conditions of another bond, executed the 22d day of July, 1848, by said Knab and Butler to one Joseph Schram, for the conveyance of certain lands to said Schram, free and clear of all incumbrance, and to save said Knab harmless on account of the covenants and obligations of the said bond to Schram.

On the 22d day of February, 1851, Butler, for a valuable consideration, assigned the bond of Knab to him (Butler) to Orton, and on the 1st day of August, 1851, Schram assigned his bond to Orton.

The bill alleges that the conditions of the Schram bond have been fully complied with in part by Butler, and in part by Orton; that the complainant *is the sole and bona fide owner of both bonds,* and is solely the equitable owner of the property mentioned therein, and that he holds the said Butler and the said Knab as wholly discharged from the said Schram bond, and the same duly and fully satisfied, and that he has a right to demand and have a conveyance from the said Knab of the said lots 7 and 8, according to the conditions of the said bond from Knab to Butler, and prays a decree compelling a specific performance of the conditions of the bond.

The answer of the defendant Knab sets forth, that in June, 1848, one Otis Hubbard inquired of him if he would become his surety for $1,000; that about three weeks after, the said Butler informed him that Hubbard had sold to Schram certain lots; that But-

ler had inquired if he would become security with him, for the conveyance of the lots free and clear, if he could be secured by lots 7 and 8 aforesaid, and that he consented to become such surety. That Butler procured the papers to be made out; that he received a deed for said lots 7 and 8, executed by Cyrus D. Davis and wife; and that he executed the said bond to Butler, and the said bond to Schram as surety with said Butler on receiving the deed, at the request of said Butler; that the papers were signed without being read, but he states what he understood to be the tenor and effect of each; that he received no part of the purchase money; that in the spring of 1851 he was informed that his bond to Butler had been assigned to Orton, and that he believes the Schram bond has also been so transferred; that he is informed and believes that the conditions of the Schram bond have been wholly or in part performed by certain conveyances, and he is advised and believes that the conditions have all been in effect satisfied by the assignment of both bonds to Orton; that at the time of the conveyance to him he believed the legal title to lots 7 and 8, vested in him by the deed from Davis, and that he never had nor pretended to have any other title thereto than that vested by such deed, &c.

That he is ready to abide the decision of the court and in order that Otis Hubbard and the said Butler may be bound by the decree, he prays that they may be made parties to the suit.

The foregoing are substantially the material allegations of the bill and answer.

Testimony was taken and read upon the hearing. On the part of the complainant the two bonds afore-

said, and the assignment of the same respectively to the complainant. On the part of the defendant it was proved that at the time of, and previous to the transactions between Butler, Hubbard, Knab and Schram, the title to the lots 7 and 8, was in Cyrus D. Davis; that he executed the deed to Knab at the request of Hubbard, and held the land for the benefit of Hubbard.

The lots were deeded to Davis by John A. Messenger, who had given his notes therefor; and Hubbard put the notes of Messenger in the hands of Davis. The notes were sued in the name of Davis; Davis testified that he had a bill of sale of the notes; that he did not know whether they belonged to him or not; that he could call them his or not, as he pleased; that he did not recollect whether he paid any consideration for the notes or not; that he did not know whether he held the notes as a cover to keep them from Hubbard's creditors or not. Butler was with Hubbard when he spoke of conveying the land to Knab—delivered the deed to Butler at Hubbard's request.

Afterwards he (Davis) executed a quit claim deed of the lots to George Smith, at the request of the administrators of Hubbard's estate, without any consideration. It further appeared from the testimony of Schram, that he bought the lots mentioned in his bond, of Hubbard—paid the consideration to Butler, a part of which Hubbard took. He received the bond of Knab and Butler, the conditions of which were in part unfulfilled, and he assigned the bond to the complainant (Orton,)

It further appeared by the testimony of I. A. Lapham, that he was the administrator of Otis Hubbard,

deceased; and that he found among the papers of Hubbard, eight notes against Butler, amounting to some         dollars, which he still held.

On the part of the complainant it was further proved, that Hubbard came to Milwaukee ih 1835 or 1836, that he was embarrassed when he came to Milwaukee, and bought lands and took the title in the name of Botsford of Chicago, and H. M. Hubbard of Milwaukee; that this property has changed hands. Otis Hubbard regulated the sales and received the proceeds. John A. Messenger held property for him. That Hubbard stated the reason why he took the title of property in the name of others to be, that there were *large claims* against him at the east— *some judgments*, upon which any thing he might have in his own name could be taken away; that all these contrivances were for placing the property beyond the reach of his creditors.

The complainant also produced the testimony of Butler (an objection to whose competency on account of interest having been attempted to be obviated by a release from complainant,) in substance that he supposed that he owned the lots 7 and 8—procured the deed to be given to Knab as security for signing the Schram bond; that the bond was executed by Knab to the witness Butler by Hubbard's directions; that he had paid Hubbard for the lands by balance of account for board, cash, goods, merchandize, &c., amounting to about $2,000, running from 1844 to '49.

That when Knab executed the bond to him it was distinctly understood that he was to have the lots when the Schram bond should be satisfied, and that Hubbard directed Knab to make the bond to him; that the bond to Schram was for Hubbard's benefit,

and that witness spent considerable time and money

in getting its conditions performed. He sold the lots to complainant and conveyed all the title he had by the assignment of the bond.

Hubbard had boarded with this witness a long time; witness had transacted much business for and with him; he was intemperate, and very troublesome at times in the family.

There was a long and rigid examination of this witness, but it is not deemed necessary to detail all the facts elicted, as they did not in our opinion discredit the witness or materially impair the weight of his testimony.

It was also proved that Knab was perfectly acquainted with the contents of both bonds, as two or three draughts were made before one was made to suit him.

Also on the part of the defendant, was introduced the record of a suit in equity, then pending between Otis Hubbard and David Knab et. al. in reference to these lots.

We have stated so much of the evidence that the material facts of the case may appear together.

The bill and answer disclose a case for specific performance, or by what name soever it may be called; a case where Knab has received the legal title to property to a large amount, as indemnity to him for signing a bond for the conveyance of other property, and has covenanted to convey the property conveyed to him, when the conditions of the bond on which he is surety are fulfilled, having no other interest in the property, and he discharged from all liability on the bond, on which he was surety.

On the bill and answer, therefore, the only ques-

tion which arises is, what are his duties and obligations under such circumstances? Undoubtedly to convey the title which he has, to the legal and equitable owner or owners of the lots holding subject to his interest.

After his bond to Schram is discharged or satisfied, he becomes a mere trustee, holding the land for the rightful owner, the trust being prescribed by his bond to Butler, and his assigns, and following the directions of the instrument which prescribes it ; we do not say that he cannot dispute the right of the person holding the equitable title, or another paper title, but that the latter must prevail unless a better equitable title be clearly set up by the answer, and clearly established by proof.

To avoid the paper title, it is not sufficient that there may possibly be an outstanding equitable title or interest, and ask to have the fact whether there be one ascertained, and if so, to have it established.

By the assignment of the Butler contract to the complainant, he became the owner ; not of the paper title to the lots, but of the paper title to the interests and trusts, if any, created by that contract or bond, whatsoever the same might be.

To avoid a compliance with the conditions of this bond, the defendant must show, by answer and proof, that there are other claims and interests which he is legally bound to regard, and which would be materially effected by the performance of the conditions of his bond, and which would excuse the fulfillment thereof.

The bill and answer show that the bond of Knab to Butler, was made and executed by the arrange-

ment, consent and direction, not only of Knab and Butler, but of Otis Hubbard likewise ; and it was the palpable duty of Knab to perform the conditions thereof as expressed therein, unless something has since arisen (which must also be specifically shown,) that discharges him from the duties and obligations assumed thereby.

We do not see what equitable consideration is due to the defendant, for refusing or delaying the performance of his contract, by conveying the lots 7 and 8 to the rightful claimant.

Indeed he does not appear to claim any exemption, but professes himself ready and willing to convey to such rightful claimant. He has now no equitable interest in the land—he does not claim any—all that he seems to desire, is to ascertain the person entitled to the conveyance from him, and having done so he is ready and willing to make the conveyance.

We think it immaterial what name is given to the bill. Its only object is to procure a conveyance of lots 7 and 8 from the defendant. And we think there can be no doubt that the defendant was bound to convey to the rightful claimant, whenever he became discharged from the Schram bond. He had no equitable claim thereafter, based upon the papers set forth in the bill.

We also think that the bill filed in this cause, is on its face sufficient for the object sought to be obtained by it. It is true that the deed to Knab was absolute on its face. It is also true, that the conveyance made to indemnify Knab against certain liabilities assumed by him, was in the nature of a security. But is it true that the bond of Knab to Butler is technically a defeasance? We think not. It contains

nothing on its face which makes the deed to Knab void, on the happening of any contingency.

There is no stipulation on the part of the defendant, for the abnegation or renunciation of the title conveyed to him, so that the land would revert to the grantor or his assigns, upon the happening of the prescribed event, leaving only the foreclosure of his interest necessary, to perfect the title in the grantor or reversioner.

He does not stipulate that on the performance of the conditions of the Schram bond, the conveyance to him would be void. But he gives his bond, covenanting therein absolutely, to convey the land to Butler, or his assigns upon such performance. Here is a positive undertaking, on his part wholly incompatible with our notions of a defeasance. We do not undertake to determine that the deed of the defendant was not, under the circumstances, so much in the nature of a mortgage, as to sustain a bill for foreclosure or for redemption. But our impression is against such a position. In case of a written defeasance on the part of the defendant, or upon proof of the fact that the conveyance was as security merely, without a defeasance in writing, a bill to redeem could be maintained. But here, it would seem, the parties have *provided* another mode, and have purposely brought themselves within the purview of another remedy. This may have been necessary.

It was not intended that the deed of Davis to Knab should be defeated in any event. It was not intended by Davis or any of the parties that the land should revert to Davis on the performance of the conditions of the Schram bond ; and hence a mere defeasance either expressed in writing, or left

to be implied from the facts and circumstances of the

transaction, would not have answered the purpose of the parties. But it seems that provision was desired to be made for the transfer of the title from Davis to Knab, until the happening of certain events, and then to be transferred to Butler or his assigns. The undertaking of the defendant was not merely to become surety to Schram upon the bond to the latter, and incur and discharge all the liabilities incident thereto, but it *extended much further*, namely ; to preserve the title unimpaired by him, and convey the same to Butler or his assigns, upon the fulfilment of the Schram bond. He was therefore more than a mere mortgagee, and his bond was different from a mere defeasance. Whatever interest Davis had in the property was gone absolutely with his deed. He reserves no interest—he demands no defeasance—he claims no remaining equity. He aids in carrying out the arrangement between Hubbard, Butler and Knab, and permits the ultimate conveyance to Butler, to be secured without objection or question. He voluntarily parted with every vestige of interest he had, without intimating any intention on his part, to consider his conveyance as for the purpose of security merely, and he must be considered as acquiescing in the execution of the bond by Knab to Butler. There was no defeasance made to him, none stipulated for. It would therefore be a perversion of terms, and an unpardonable misapplication of the principles of law and equity, to call him an equitable mortgagor, and such he must be if any at all.

If it shall be alleged that Davis remained a mortgagor holding the equity of redemption in trust for Hubbard, then any such equity was relinquished by

the assent and direction of the latter, (Hubbard,) in the making of Knab's bond to Butler, and that he assented to that transaction, there can be no doubt. Indeed the whole design of all the parties apparently, was to remove the title absolutely from Davis, in order that the property could be used for all the purposes contemplated. We are of opinion, consequently, that the papers in the case, and the attending circumstances, do not give the conveyance to Knab the character of a mortgage, so as to preclude a bill for specific performance, and to render a bill to redeem necessary, with all the parties, essential to bills of that nature. Nor can we perceive any equity set up by the defendant, which can prevail against the paper title of the complainant, provided the same has come to him untainted. And this leads us to examine some other positions assumed by the counsel for the defendant, and the evidence on which they are based.

It is claimed that in the several parts of this transaction, Butler acted as the agent of Hubbard, and committed a fraud upon his principal in causing the bond of Knab to *re-convey*, to be made to *himself*, but we think that neither the answer nor the proofs sustain the position. It is by no means established, that Butler acted as the agent of Hubbard in this trrnsaction. He was with him and aided him it is true, but the whole matter was controlled by Hubbard. He (Hubbard) first spoke to Knab to become surety to Schram, Schram treated with Hubbard for the purchase of his lots. Hubbard first spoke to Davis about, and directed the conveyance to Knab. It seems that Butler was the mere man of errands in the business. And is it to be supposed, that having

directed every other step in the progress of the transaction, he failed to direct the execution of *Knab's bond to Butler?* the step which was to dispose of the ultimate title to the lands? There is the direct proof of Butler that he did so, and all the circumstances of the case so strongly corroborate that statement, as to leave no doubt on the subject.

And can that bond to Butler, be in fraud of the rights of Hubbard, when he expressly directed it so to be done? And does the rule of presumptive fraud sometimes applied to agents, extend to the direct personal acts of the principal, no deceit or imposition being practiced? Hubbard most certainly intended that there should be a re-conveyance from Knab, on the fulfillment of the Schram bond, to somebody, and he intended that Knab should be bound in writing thus to convey. To whom then did he intend that such bond should run? Not to Davis, for there is not the slightest intimation of the kind, but on the contrary, every circumstance goes to rebut such an idea: not to himself, certainly, for during the last 12 or 13 years, he had studiously avoided any paper evidence of title or interest in himself. Nor would he have gone on and consummated his trade with Schram, by means of the arrangements made, if he had not assented to the bond to Butler. Independent of the positive testimony of Butler, the inference is irresistible that that bond was made and executed precisely as Hubbard desired.

How then can it be said to be in fraud of Hubbard's rights? And how can Hubbard be said to have a resulting trust in Davis, or Davis a resulting trust in the land, in behalf of Hubbard, when Hubbard by his own act, has carefully caused everything

39

of the kind to be cut off, and given a new and final direction to the reversion, evidenced by a written instrument with all usual formalities ! We do not perceive that the title of the complainant, is tainted by any relationship of the kind suggested between Hubbard and Butler. Nor are there any circumstances of hardship or suspicion of fraud, less than what the law deems absolutely fraudulent, which would render the specific performance of the contract hard or oppressive upon the defendant. His bond to Schram has been satisfied and he discharged from all liability thereon. What right then has he to hold on to the land in question ? or to refuse to convey the land according to his solemn covenant ? What is it to him in *foro conscientia*, whether Butler paid Hubbard an adequate consideration for the lots or not ? What is it to him whether Butler or Hubbard procured the necessary deeds to be executed to Schram, provided Schram was satisfied and *released him ?* What to him though the McDougal judgment remained a lien on the lots, if Schram or his assigns had cancelled his bond, and discharged him from all liability thereon ?

But it is urged that the defendant being a simple mortgagee, could convey no legal tile to the complainant, and that by discharge of the mortgage, by release or satisfaction of the terms on which it was taken, the property reverted to the mortgagor Davis. What we have before remarked is a sufficient answer to this suggestion. The terms on which the deed was taken, were to hold the same as indemnity, and to reconvey, not to Davis, but to Butler, when such indemnity should be no longer needful. The terms could only be fulfilled by re-conveyance, when the occasion of indemnity had passed away. It is impossi-

ble to regard Davis as a constructive mortgagor in trust, and Hubbard his *cestui que trust*, when Davis had conveyed absolutely, and Hubbard had caused the whole estate to be disposed of, in which disposition Davis as well as Hubbard acquiesced. It does not appear that any consideration passed to Davis from Knab or Hubbard, and it does positively appear, that Davis did sometime afterwards convey by *quit claim* deed, all his interest to George Smith *without any consideration*, at the request of Lapham, Hubbard's administrator, thereby evincing that he acquiesced in the disposition of the estate, made by Hubbard in his life time, or in other w ordsdisclaiming all interest or estate of any kind in himself.

If there was any trust of the reversionary interest arising out of the transactions, of which Hubbard was the *cestui que trust*, the trustee must have been *Butler and not Davis*, for on the hypothesis of such trust, it is apparent that by the transactions of Hubbard, Davis, Butler and Knab, the trust was discharged from the hands of Davis to those of Butler, by the mutual consent of all parties. It must be recollected that the defendant attempts to set up and prove an outstanding interest in the land in Hubbard or his representatives. It is incumbent on him to prove it. But it is difficult to say that Knab does disclose in his answer, any such interest as precludes the complainant's right to the relief prayed for. His answer in fact does not undertake to set out such interest, and does not disclose such facts, as to require the Court to interpose in behalf of an implied trust. Admitting then or waiving for the present, whether his answer would render proof of an implied trust, available to him in avoidance of his bond to Butler,

we will examine the alleged interest in Hubbard or his legal representatives. If Hubbard or his legal representatives had any estate in the property, after the execution of the bond to Butler, it was a trust estate, for there is no pretence that he ever had a shadow of legal title in this or any other property in Milwaukee.

Trusts are either express or implied. There is no pretence here of any express trust, of which Hubbard was the *cestui que trust*. There does not appear to be a vestige or character of such trust declared in writing, and no parol proof has shown it, if it was competent. If, therefore, there was any trust, it was an implied one. One which the facts and circumstances of the case force upon the notice of the court, by the mandate of the law and compel its recognition. Lord Nottingham in *Coke vs. Fountain*, 3 *Swan R.* 585, says, there is one good, general and infallible rule that goes to both these kinds of trusts. It is such a general rule as never deceives; a general rule to which there is no exception; and that is this; *the court never presumes a trust but in case of absolute necessity.* The reason of this rule is sacred, for if the chancery do once take the libery to construe a trust by implication of law, or to presume a trust unnecessarily, a way is opened to the lord chancellor to *construe or presume any man in England out of his estate*, and so at last every case in court will become *casus pro amico.*"

It is claimed on the part of the counsel for the defendant, if we understand their position in this respect, that as Hubbard originally bought the property and paid for it, though he caused the title to be made to another, yet such mandatary of the legal

title took and held it in trust for Hubbard. In other words, that from this transaction there was a resulting trust in Hubbard. No principle of equity jurisprudence is better settled than this,—that when A purchases property and pays the money, and takes title in the name of B, there is a resulting trust in behalf of A. But this trust is liable to be rebutted. In the absence of proof, the law presumes that the arrangement was for convenience, or some other *honest* purpose. Yet the fairness and honesty of the transaction may be impeached by proof, and the presumption of the law rebutted; and the facts must be clearly established to raise any legal presumption. *Vide case of Leman vs. Whitney,* 4 *Russ. R.* 422. Has the defendant brought himself within this rule? How stand his proofs? The only witness called by the defendant directly to this point, is Cyrus D. Davis. He says he held the legal title to the land for the benefit of Hubbard, and that he received the deed of the same of Messenger. But he testifies to no payment of money by Hubbard—to no purchase from Messenger, and that he deeded it to Knab at Hubbard's request, without any consideration. He also received some notes of Messenger from Hubbard. He might call them his or not, as he pleased, and he did not know whether he held the property as a cover to keep it from Hubbard's creditors, or not.

Now, this is the proof upon which the court is asked to presume a trust,—no evidence of Hubbard's paying money for the land—nothing from which the law would imply a trust. If any trust there was in Davis, it was simply an express trust, resting wholly in parol. It could not be enforced against Davis by Hubbard, or his representatives. Free this transac-

tion from all suspicion of fraudulent intent in Hubbard, which can scarcely fail to suggest itself from the evidence of Davis, and even then, the court could not presume, nor would the law imply a trust, from proofs so vague and unsatisfactory. The history of Hubbard's transactions is made more clear by the testimony introduced on the part of the complainant. But if this evidence is to be taken, and we think it competent to rebut a presumption of a trust, then it must all be taken together; and so considered, it shows that the design of purchasing property, and taking the title in the name of Botsford, of Messenger and Davis, was fraudulent, conceived for the express purpose of defrauding his creditors, and hence shows a case from which no implication of a trust in behalf of Hubbard could possibly arise. The testimony of Pettibone and Messenger, independent of that of Butler, conclusively shows the fraudulent intent of Hubbard in all these transactions.

It is not the complainant who is seeking, *in the first instance*, to repel the presumption of a trust in Hubbard's behalf, but it is the defendant seeking to establish one, in avoidance of his liability upon his bond to Butler. It would seem, therefore, that no very critical examination of Butler's testimony was necessary; though we think we ought to say, that we are unable to perceive that either the character of his answers to the interrogations put to him, or the facts and circumstances detailed by him, ought to impeach his testimony. Nor can we say that there is direct evidence of fraud on his part, nor facts, circumstances and relations disclosed, which ought to subject him to the imputation of fraud.

We have already sufficiently discussed the charac-

ter of the transactions which resulted in the execution of this bond of Knab to him (Butler). One point, however, ought perhaps to be noticed. It is said that all title or interest of Butler in the land, *rests in parol*—that his purchase of Hubbard was by parol, and hence void—that he paid no consideration for the land, &c. As Hubbard had no title in himself, we suppose if he was the real owner of the lots, he might, by *parol*, direct a transfer of title, and when executed it would be good. Such was precisely the character of the transaction by which the title was conveyed to Davis. Messenger held it; Hubbard directed by parol the deed to be made to Davis, and it was done. Davis then held it; Hubbard directed by parol the title to be transferred to Knab. Knab held it for certain purposes, and Hubbard directed by parol that when those purposes should be accomplished, the title should be transferred to Butler, and Knab bound himself accordingly. How does the one differ from the other, so far as the parol acquisition is concerned? Whether Butler paid any consideration to Hubbard or not, the equity resting upon the defendant is the same.

But is it true that there was no consideration?— Admit for the moment that that portion of the consideration testified to by Butler, resting on account for board, goods, &c., should be discarded. Why did Butler enter into the bond to Schram with Knab? The counsel for the defendant say that Butler was principal in that bond, and if so, in performing its conditions, he did no more than he was legally bound to do. But if he was in fact principal, is not such fact wholly inconsistent with Hubbard's alleged trust or ultimate interest in the land? If Hubbard was

the real owner, why did Butler go upon the bond? why did he go to Rochester to procure the necessary deeds to Schram? Here is some consideration, certainly.

But it is said that it was inadequate. Admit it. Yet any consideration paid by the grantor is sufficient to repel the presumption of a resulting trust (*Story's Eq. Juris.* § 1119), and this hypothesis of a resulting trust in behalf of Hubbard, cannot avail the defendant. It seems to be inconsistent, to allege that Butler was principal in the Schram bond, and legally and equitably bound to its performance, and then to allege that the whole matter of using Butler's name was of mere convenience, and Hubbard was the sole party really interested. These two hypotheses are incompatible, and yet we do not know which the defendant inclines to adopt.

We have examined carefully the whole record in this case, and, as requested, have critically reviewed the testimony of Butler, and we do not think we would be justified in rejecting it, but on the contrary, feel bound to give credence to it. It would have been more satisfactory, certainly, if he had produced an account stated between him and Hubbard; but he explains in some measure why that was not done. We must then regard the testimony of this witness as a tissue of falsehood and perjury, or we must regard him as the *real bona fide holder and owner of Knab's bond;* and, as such, he or his assigns is entitled to a conveyance from Knab on his discharge from liability thereon, according to its terms.

It now only remains to consider the question of parties, and after the expression of the foregoing views, but little need be said on this point. We do

not think that either Hubbard or his representatives, or Davis or his grantees, or Butler, ought to be made a party to this suit. The interest in Hubbard is alleged by the defendant, but he does not prove it. The only interest pretended, is his implied trust in the estate, and we have already shown that the allegation of such an interest is unsustained by the evidence, even were it sufficiently averred in the answer. The same remarks will apply to Davis, and Butler will unquestionably be bound by the decree which may be rendered herein. But it does not appear that any opportunity was given to the complainant by the court below, to amend his bill by making new parties. A bill ought not to be dismissed for want of parties, without giving the complainant leave to amend, and the usual order in such case is, that the cause stand over to give the complainant an opportunity to amend in that respect. There is some confusion in the books as to the necessary parties to a suit in equity, and the reasons for some of the distinctions made by the cases cited are not very clear; but when the defendant makes the want of parties a ground of defence, the requisite interest of such persons should be clearly established, and not left to conjecture merely. The same proof which tends to show a resulting trust in Hubbard, clearly shows that the only mode by which any interest could be found in him, was a contrivance on his part, early conceived and long persisted in, to defraud, hinder and delay his creditors. If the establishment of this fact were essential to the complainant's case, it might be necessary to make the person so charged a party; but as this fact of Hubbard's interest is set up by the defendant himself, and of course it being incumbent on

him to prove it, and as in attempting to prove his interest it is apparent that his only possible interest is that of an alleged resulting trust, which must be implied, if at all, from a fraudulent transaction, from which no trust can be implied in law; and further, as he directed and controlled all the transactions out of which his alleged trust could arise, which transactions are evidenced by written instruments, it is impossible for us to conceive a necessity for other parties than those which already appear upon the record. (See *Story's Eq. Pl.,* § 129, 126, 127, 135, 136, 137, 404, 407; 17 *Ves.* 17; 13 *Pet.* 13.

It is not deemed necessary to review the authorities cited by counsel. The principles which should govern this case are, in the main, simple and elementary.

The order of the Circuit Court must be reversed.