Sage v. The State.

Judgment reversed, with directions to the circuit court to set aside the finding and grant a new trial.

Filed Jan. 28, 1891.

No. 15,774.

SAGE v. THE STATE.

CRIMINAL LAW.—*Grand Jury.—Irregularities.—Abatement.*—The failure of the court to interrogate a by-stander, called as a grand juror, before permitting him to become one of the panel, as required by statute (section 1651, R. S. 1881), is not sufficient cause for abatement of the prosecution, if such person is in fact a qualified juror.

SAME.—*Murder.—Accessory before the Fact.—Amendatory Act.—Ex Post Facto Law.*—The act of March 9th, 1889 (Elliott's Supp., section 302), amending section 1788, R. S. 1881, which declares who shall be deemed an accessory before the fact to the crime of murder and prescribes the punishment, makes no change in the former law except as to the remedy. The change made does not take away the right of the State to prosecute for a felony committed prior to its enactment, as a change in the remedy is not within the constitutional inhibition in respect to *ex post facto* legislation.

SAME.—*Re-Enactment of Statute.—Statute not Repealed.*—An amendatory statute, defining an offence in substantially the same language as that employed in the statute it amends, and simply re-enacting it, does not deprive the State of the right to prosecute for an offence committed before the act became effective.

SAME.—*Evidence.*—On the trial of a man as accessory before the fact to the murder of an illegitimate child by its mother, which he had made the condition of his marrying the mother, it was competent for the State to prove by her that she was pregnant as the result of an illicit intercourse with the accused, such fact tending to render probable her statement that he advised and encouraged her to murder the child ; but it was not competent for the defence to prove specific acts of immorality with other men, as that she had previously given birth to an illegitimate child.

SAME.—*Confidential Communications.*—The admission of evidence that the accused and his wife were in a room by themselves after the arrest does not violate the rule protecting communications between husband and wife.

SAME.—*Testimony of Deceased Witness.—Stenographer's Report.*—The official

Sage v. The State.

stenographer may properly be permitted to read from his report of the testimony of a witness given on a former trial, who had since died.

SAME.—*Defendant's Statement before Coroner.*—The statement of the defendant, accused as an accessory before the fact, made before the coroner, authenticated by the coroner's certificate and identified by him as the statement made by the defendant, was properly admitted in evidence, and the accused had no right, on cross-examination of the coroner, to inquire whether the statement was all reduced to writing.

SAME.— *Witness.—Impeachment of Character.*—Where a witness, whose character was sought to be impeached, had been imprisoned in one of the prisons of the State, remote from her place of residence, and was, during the seven years intervening between the time of the trial and the time she last resided at her former home so confined in prison, it was not error to refuse to permit a witness who had testified as to the character of such witness at the time she resided at her former home, to testify as to the general character of the witness at such former residence at the time of the trial.

SAME.— *Witness's Interest in Defendant's Cause.*—Defendant's witness may properly be asked on cross-examination if he did not leave home in order to enable the defendant to obtain a continuance, as the question tends to show the interest of the witness in the defendant's cause.

SAME.—*Complicity of Accused.—Evidence.*—The defendant made the murder of an illegitimate child a condition of his marrying the mother, and to influence him to take her as his wife she murdered the child. For a number of years she declined to implicate her husband, and continued to do so until the defendant, after she had been in prison for some years, applied for a divorce.

*Held,* that it was competent for the State to prove when the wife made known her husband's complicity in the crime.

SAME.— *Words and Acts of Accessory.*—Where death results from a felonious act of the principal, brought about by the counsels or commands of the accessory, the latter is guilty, although death may not have resulted immediately or directly from the act of either of the wrong-doers. Nor is it necessary that the acts or words of the accessory should directly incite or expressly command the principal to commit the homicide; it is enough if it appears that the acts or words of the accessory were intended to secure the unlawful killing of the deceased, and that they effected that result.

ARGUMENT OF COUNSEL.— *What Does not Constitute Misconduct.*—Erroneous inferences from the evidence drawn by counsel and stated in their addresses to the jury, or mistaken opinions of the law expressed by them in such addresses, do not, as a general rule, entitle the complaining party to a new trial.

From the Grant Circuit Court.

*W. H. Carroll, A. E. Steele* and *J. A. Kersey,* for appellant.

*A. G. Smith,* Attorney General, *C. M. Ratliff,* Prosecuting Attorney, *S. W. Cantwell, H. Brownlee, H. J. Paulus* and *O. A. Baker,* for the State.

ELLIOTT, J.—The appellant was indicted as an accessory before the fact to the crime of murder in the first degree. The indictment first returned against him was held bad on a former appeal. *Sage* v. *State,* 120 Ind. 201. He was again indicted, tried, and convicted.

A plea in abatement, filed by the accused, presents the question as to the effect of the failure of the court to interrogate a bystander, called as a grand juror, before permitting him to become one of the panel. The statute requires that " before any talesman is accepted and sworn, the court must inquire of him, under oath, as to his qualifications." Section 1651, R. S. 1881. This provision does, unquestionably, impose a duty upon the trial court, and if it could be assumed, as a matter of course, that every error, or every departure from duty, which occurs in selecting grand jurors, entitles an accused to a judgment abating the prosecution, then we should have no difficulty in reaching the conclusion that the trial court did wrong in sustaining the demurrer to the plea; but it is, by no means, every breach of duty regarding the selection of grand jurors that is cause for abatement; on the contrary, a breach of duty, or an error, which does not prejudice the accused, is not sufficient cause for abating the prosecution against him. If, in fact, duly qualified grand jurors are selected, the prosecution will not abate, although there may be some errors, or irregularities, in the mode of their selection. Our conclusion that where qualified jurors are secured, an error, or irregularity, in calling, or empanelling them, does not supply ground for a judgment of abatement, is well fortified by authority. *Har-*

*din* v. *State,* 22 Ind. 347; *Cooper* v. *State,* 120 Ind. 377; *State* v. *Mellor,* 13 R. I. 666; *Commonwealth* v. *Brown,* 147 Mass. 585.

As there is no pretence that the bystander called into the box was not fully qualified to serve as a grand juror, the question presented by the plea in abatement is fully disposed of by the application of the doctrine we have stated.

The statute defining the offence of which the appellant was convicted, in force at the time the acts which constitute the the crime were done, reads thus: " Every person who shall aid or abet in the commission of any felony; or who shall counsel, encourage, hire, command, or otherwise procure such felony to be committed—shall be deemed an accessory before the fact, and may be tried and convicted in the same manner as if he were a principal, and either before or after the principal offender is convicted, and charged or indicted; and upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal." In 1889, an act was passed which reads as follows: " Be it enacted that section 1788, R. S. 1881, be amended to read as follows: Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire or command, or otherwise procure a felony to be committed, may be charged by indictment, or affidavit and information, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted, and upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal." Elliott's Supp., section 302. There is, in our judgment, no substantial difference between the two acts, except as to the matter of the remedy, for the elements of the crime are the same under the one statute as under the other. It is true that the later act omits the words " shall be deemed an accessory before the fact," but this omission effects no substantial change in the nature of the offence. It is of little im-

portance that a name or title is altered or omitted where the body of the offence remains the same, and it does in this instance so remain. The omission to give the offence defined a formal name neither adds to the burden of the accused nor diminishes that of the State. No less evidence would be required on the part of the State to warrant a conviction, nor more required on the part of the accused to secure an acquittal under the later statute than was required under the earlier. In no particular whatever, save as to the remedy, does the amendatory statute work any change.

Having ascertained and stated the difference between the two statutes, we are next to inquire and decide whether such a change as that wrought by the amendatory act of 1889 takes away the right of the State to prosecute for a felony committed prior to its enactment. As we have seen, the two statutes are, as regards the offence itself, substantially the same, for precisely the same acts are essential to constitute the crime under both the earlier and the later statutes, so that the situation of the accused is not altered in this respect to his disadvantage, nor is it altered in respect to the punishment, hence it can not be justly asserted that there has been any *ex post facto* legislation. *Holden* v. *Minnesota*, 137 U. S. 483 ; *Medley, Pet.*, 134 U. S. 160 ; *Calder* v. *Bull*, 3 Dall. 386 ; *United States* v. *Hall*, 2 Wash. C. C. 366. The general rule is that a change in the remedy is not within the inhibition of the Constitution. *Robinson* v. *State*, 84 Ind. 452 ; *State* v. *Manning*, 14 Tex. 402 ; *Lazure* v. *State*, 19 Ohio St. 43 ; *Sullivan* v. *City of Oneida*, 61 Ill. 242 ; *Rand* v. *Commonwealth*, 9 Gratt. 738 ; *South* v. *State*, 86 Ala. 617 ; *Perry* v. *State*, 87 Ala. 30 ; *State* v. *Cooler*, 30 S. C. 105 ; *State* v. *Ah Jim*, 9 Mont. 167.

It is possible that the doctrine asserted by the majority of the court in *Kring* v. *Missouri*, 107 U. S. 221, does in some degree impinge upon the general rule asserted by the decided. weight of authority, but that decision does not go to the extent of breaking down the general rule so long approved by

the courts and the text-writers, for the utmost that can be said of that decision is that it declares that the mode of procedure may sometimes so far and materially affect the rights of an accused as to fall within the sweep of the constitutional provision prohibiting the enactment of *ex post facto* laws; but giving to that decision the comprehensive effect just ascribed to it, still the act of 1889 is not within its scope, for the reason that the provisions of the act affect the remedy purely, and they neither make it easier for the State to convict nor harder for the accused to secure an acquittal. In short, that act, justly interpreted, simply affects the mode of pleading, and that only to the extent of providing an additional mode of presenting the charge.

A more difficult question is presented by the contention of appellant's counsel that the amendatory act obliterated the act of 1881, and left no law in force defining the crime of which their client was convicted. It is true that in a certain sense and for certain purposes an amendatory act does strike down the act which it amends, for it has often been held that an act which has once been amended can not be again amended, since it is superseded by the amendatory act. *Draper* v. *Falley*, 33 Ind. 465; *Board, etc.*, v. *Markle*, 46 Ind. 96; *Longlois* v. *Longlois*, 48 Ind. 60; *Blakemore* v. *Dolan*, 50 Ind. 194; *Feibleman* v. *State*, 98 Ind. 516; *Hall* v. *Craig*, 125 Ind. 523. These decisions undoubtedly settle the law upon the question to which they are addressed, for they affirm that an attempt to amend a statute which has already been amended is fruitless, but that is not the question here, for the question here is, Does an amendatory statute which re-enacts a former statute so completely destroy it as to prevent a prosecution for an offence committed before the amendatory act became effective?

It is evident from our statement of the question that there is an essential difference between the class of cases represented by the present and the class represented by the decisions to which we have referred. It may well be true that an

amended statute is so far superseded that it is incapable of further amendment, and yet not be true that the amendatory act so effectually sweeps away all vestiges of the earlier act that the offence ceased for a time to exist. The affirmation of the one proposition does not necessarily lead to the affirmation of the other, for the one may, with strict logical. accuracy, be affirmed and the other denied. If this be true, then it must also be true that the decisions referred to do not require us to affirm that the re-enactment of a statute by an amendatory statute necessarily deprives the State of the right to prosecute one who committed a felony prior to the enactment of the amendatory statute. Giving to those decisions full sanction, and assigning to them due force and effect, we are, nevertheless, at liberty to adjudge that they do not settle the question here presented. That some of the expressions contained in the opinions do seem to sustain the position of appellant's counsel is true, but the authoritative declarations addressed to the questions before the court, and relevant to the point in judgment, have no such effect, hence they can not be regarded as of binding force. As arguments they are entitled to consideration, but only to consideration as arguments, upon the question in the mind of the court ; so far, however, as regards questions arising upon a radically different state of facts, they are of comparatively little weight even as arguments.

Assuming, upon the strength of what we have said, that the question here involved is not conclusively settled by the cases to which we have referred we shall treat it as one open to discussion, and shall first consider it upon principle.

Principle forbids the conclusion that an amendatory statute defining an offence in substantially the same language as that employed in the statute it amends, takes away the right of the State to prosecute the offender and requires his unconditional discharge. It can not be logically affirmed, where the same offence is defined in the same way by both the earlier and the later statute, that there is an interregnum

in which there was no law defining the offence. The two acts interfuse and blend so fully and compactly that it is impossible that there can be an interval when there was no law. Between the two acts there is no period of intervening time in which no offence existed. The duration of the statute was unbroken and continuous, and the crime one and the same. The amendatory act creates no new offence, nor does it absolve an offender from one previously committed; it simply re-enacts the earlier statute, so that the offence is the same under the one act as under the other. If a new offence had been defined, or new elements added to the crime as defined in the first statute, there would be force in the position that the offence defined by the earlier act had ceased to exist, but where the offence remains unchanged from first to last there is no plausibility in the argument that when the amendatory statute took effect the crime ceased to exist. There can be no plausibility in such an argument for the plain reason that there was no interval when the crime was not punishable, inasmuch as there was not an instant of time when there was not a law defining and denouncing it. The succession of the statutes was unbroken and the reign of law uninterrupted.

The conclusion to which the appellant's argument leads goes far to prove it unsound. If the argument is valid, then a man guilty of an offence, such as that of which the appellant was convicted, could not be punished if the crime was committed in 1881, although it had remained undiscovered until 1890. Again, if the crime was committed during the last hour before the act of 1889 went into effect, the offender could not, according to the appellant's theory of the law, be punished at all. A doctrine which leads to such results has nothing to commend it, and it would be a sacrifice of substance to a fancied demand of consistency to yield to it. To that demand we are not disposed to assent.

The authorities give the rule we have declared strong and full support. In the case of *State* v. *Wish*, 15 Neb. 448 (5

Crim. Law Mag. 811), the question arose in precisely the same manner in which it arises in the case before us, and it was held that the amendatory act did not preclude a prosecution, although the acts constituting the crime were done before the enactment of the amendatory statute. In announcing its conclusion in that case the court said: "We hold, therefore, that when the re-enactment is in the words of the old statute and was evidently intended to continue in force the uninterrupted operation of such statute, the new act or amendment is a mere continuation of the former act, and is not in a proper sense a repeal." Other courts have declared a similar doctrine, asserting that the re-enactment of the old statute necessarily continues it in force, as there is no interval of time in which its operation was interrupted. *Commonwealth* v. *Sullivan*, 150 Mass. 315; *Fullerton* v. *Spring*, 3 Wis. 588; *Hurley* v. *Town of Texas*, 20 Wis. 665; *Randolph* v. *Larned*, 12 C. E. Green (N. J.), 557; *Dashiel* v. *Mayor*, 45 Md. 615; *Ballin* v. *Ferst*, 55 Ga. 546; *Willard* v. *Clarke*, 7 Metc. 435; *Kessler* v. *Smith*, 66 N. C. 154; *State* v. *Sutton*, 100 N. C. 474.

Some of the cases go further, for they declare that if the old statute is substantially re-enacted its operation is uninterrupted although the amendatory statute may contain an express repealing clause. *State* v. *Baldwin*, 45 Conn. 134; *Powers* v. *Shephard*, 48 N. Y. 540. Our own court has recognized and enforced the general doctrine that the statute amended is not repealed by an amendatory statute which substantially re-enacts it. In *Alexander* v. *State*, 9 Ind. 337, the question was presented, as it is here, upon an amendatory statute, and the court held that the old statute was not repealed in such a sense as to preclude the State from prosecuting for an offence committed before the amendatory statute was passed. The court there said: "It is clear that this was not a repeal. It was not so designed. It was simply an amendment. In *Cheezem* v. *State*, 2 Ind. 149, it was held that a re-enactment in substance of a section of former statute,

was not a repeal of it." To the same effect·is the decision in
the case of *State* v. *Miller*, 58 Ind. 399. In that case the
question was presented, as it is in this instance, and the court
said : " The amendment of a statute is not a repeal of it by
implication, further than it renders the amended statute in-
consistent in letter or spirit, or both, with the unamended
statute." The general question was before the court in *Cor-*
*dell* v. *State*, 22 Ind. 1, and it was there said : " But the re-
enactment of an existing provision of law, in a later statute,
does not necessarily repeal such former provision." Other
cases of our own assert the same general doctrine. *Gorley* v.
*Sewall*, 77 Ind. 316 ; *Martindale* v. *Martindale*, 10 Ind. 566.
The decision in the case of *Goodno* v. *City of Oshkosh*, 31
Wis. 127, is not opposed to the doctrine of our cases, although
it is true that some expressions found in the opinion seem to
warrant that inference. What is decided in that case is that
a provision of the old statute not found in the new is re-
pealed, so that it is quite clear that the decision is not rele-
vant to the present controversy. It is evident from the
earlier, as well as the later, decisions of the Supreme Court of
Wisconsin, that it never intended to hold that an amenda-
tory statute re-enacting the provisions of a former statute
repealed entirely the old act, for no court has more clearly or
strongly affirmed that the re-enactment of a former statute is
not a repeal than that court has done. *State* v. *Ingersoll*, 17
Wis. 651 ; *State* v. *Gumber*, 37 Wis. 298 ; *Glentz* v. *State*, 38
Wis. 549 ; *Laude* v. *Chicago, etc., R. W. Co.*, 33 Wis. 640.

On the direct examination of Eliza Sage the fact that she
was pregnant as the result of illicit intercourse with the ap-
pellant was elicited, and upon cross-examination it was
sought to prove that she had previously given birth to an
illegitimate child, but the court refused to permit her to be
cross-examined upon that subject. In this there was no
error. It was competent for the State to show the intimate
relations between Eliza Sage, the principal, and the appel-
lant, since that fact tended to render probable her statement

that he advised and encouraged her to murder the child born to her as the fruit of a former carnal intercourse, but it was not competent for the defence to prove specific acts of immorality with other men.

There was no error in permitting the State to prove, as a fact, that the appellant and his wife, Eliza Sage, were in a room by themselves after the arrest. In admitting evidence of the fact the court did not violate the rule protecting communications between husband and wife.

No error was committed in permitting the official stenographer to read from his report of the testimony of a witness given on a former trial, who had since died. That the testimony of a deceased witness may be repeated at a subsequent trial is well settled. *Rooker* v. *Parsley*, 72 Ind. 497 ; *Indianapolis, etc., R. W. Co.* v. *Stout*, 53 Ind. 143 ; *Horne* v. *Williams*, 23 Ind. 37. It is also settled that the reproduction of the testimony of a witness, who was examined on a former trial, is not a violation of the fundamental rule that the accused has a right to be brought face to face with the witnesses against him. *Summons* v. *State*, 5 Ohio St. 325 ; 1 Bishop Crim. Pr. (3d ed.), sections 1195, 1196. A witness may, for the purpose of refreshing his recollection, refer to a memorandum made by him at the time. *Johnson* v. *Culver*, 116 Ind. 278 ; *Billingslea* v. *State*, 85 Ala. 323. He can not testify entirely from the memorandum, as a general rule, but he may use it for reference. *Maxwell* v. *Wilkinson*, 113 U. S. 656. As the question is here presented, and upon the specific objection made by appellant's counsel, the trial court went as far in its preliminary examination of the stenographer as it was required to do, and we are unable to say that any error was committed in allowing him to use his notes. It is proper to say that we deem it unnecessary to inquire whether an official reporter, sworn pursuant to law to make a true and correct report of the evidence, stands upon a different footing from ordinary witnesses or not ; but we think it is also proper to say that there is much reason why a distinc-

tion should be made in a case where a sworn official stenographer is called to testify as to the testimony of a deceased witness, and a case where an ordinary witness is called for that purpose.

The coroner who held the inquest over the body of the child murdered by Eliza Sage, and whose murder the appellant aided and advised, testified that a paper produced was the statement made by the appellant at the inquest; that officer further testified that the paper was read over to the appellant, that he signed it, and that he was sworn before his testimony was heard. The appellant's counsel proposed to cross-examine the coroner as to whether the paper signed by the appellant contained all the testimony given by him at the inquest, but the court refused to permit the counsel to examine the coroner upon that subject. The question as it comes to us does not require us to determine what the rule would be in a case where the accused offered, at the proper time, to show fraud or mistake in reducing his statements to writing, for here the question is whether the accused has a right, on cross-examination of the coroner, to inquire whether the statement was all reduced to writing. As the question is presented in this instance it must be held, upon the authority of *Woods* v. *State*, 63 Ind. 353, that it was rightly decided by the trial court that the appellant had no right to ask the questions he proposed.

The statement made by the appellant before the coroner came from the hands of the legal custodian and reads as a consecutive instrument, it is authenticated by the coroner's certificate and is identified by him as the statement made by the appellant. Under these circumstances the statement was properly admitted in evidence.

Eliza Sage, the principal, was a resident of Hartford City until May, 1883, when she was imprisoned in one of the prisons of the State, at Indianapolis. This trial was begun on the 6th day of May, 1890, and, in the course of the trial, a witness called by the appellant was asked to " state to the

jury whether you are acquainted with her general moral character at the present time in that neighborhood." The court had permitted the appellant's witness to testify as to the character of Eliza Sage at the time she resided in Hartford City, and by the term " that neighborhood," was meant Hartford City. The question for our decision is whether the trial court erred in refusing to permit the State to prove the character of the witness at a place where she had not been for about seven years. But for the fact that the witness whose character was assailed was during the seven years intervening between the time of the trial and the time she last resided at Hartford City, confined in prison at Indianapolis, there would be much less difficulty in solving the question.

We agree with appellant's counsel, that the decisions in such cases as *Rucker* v. *Beaty*, 3 Ind. 70; *City of Aurora* v. *Cobb*, 21 Ind. 492; *Abshire* v. *Mather*, 27 Ind. 381; *Chance* v. *Indianapolis, etc., Co.*, 32 Ind. 472; and *Rawles* v. *State*, 56 Ind. 433, do not determine the question here presented; but we do not agree that the decisions in *Memphis, etc., Co.* v. *McCool*, 83 Ind. 392, and *Pape* v. *Wright*, 116 Ind. 502, decide the question in their favor. The truth is that in none of those cases is the question presented as it is here, although the cases first named bear upon the general question, inasmuch as they declare that where the time is too remote the impeaching evidence is not competent.

It is evident that a general character may change in seven years; but it is, we suppose, also evident that a general character can not be created within the walls of a prison so as to be known at the former home of the witness, many miles distant from the prison. If this be true, then witnesses who knew nothing of the witness sought to be impeached in this instance, during the seven years of imprisonment, can not know her general character at her former home at the time of the trial. The utmost that such impeaching witnesses can know is that the character of the witness assailed was bad at the

time she left her home to become a prisoner. The trial court, it is to be kept in mind, permitted evidence of the character of Eliza Sage, at the time she resided in Hartford City, to be given, and this ruling certainly gave the appellant the benefit of all the knowledge his impeaching witnesses could possess. Counsel quote from a text-book as sustaining their position, the following statement of the law : " It is attempted to impeach the character of P., a witness at a trial. A. and B. knew P. four years before, when he resided at another place. They testify that P.'s character was then bad. The presumption is that P.'s character remains the same." Lawson Presumptive Ev., 180. Granting that this is a correct statement of the law, it proves that the ruling of the trial court was right, not wrong, as counsel assume, since it gives their client the benefit of the testimony of the character of Eliza Sage at the time she left Hartford City, and authorizes the presumption that her character continued bad until the time of the trial. Our conclusion is, that whatever may be the true rule upon the general question, the trial court did not, in this instance, err to the prejudice of the appellant.

One of the witnesses called by the appellant was asked, on cross-examination, if he did not leave home in order to enable the defendant to obtain a continuance, and to this question counsel interposed a general objection. Under the general objection no question is properly presented, but waiving the infirmity in the objection, and deciding the question as if it were properly presented, we adjudge that no error was committed. This we do for the reason that the question asked, on cross-examination, was competent as tending to show the interest of the witness in the appellant's cause.

The witness Eliza Sage was recalled for cross-examination after the defendant had introduced part of his evidence, and the cross-examining counsel proposed to ask her several

questions respecting her treatment of the child she subsequently murdered, but the court refused to permit the questions to be answered.  We can not hold that there was any abuse of discretion by the trial court, for the questions referred to specific collateral acts, and did not bear upon the subject of the direct examination.

It appears from the evidence that for years the witness, Eliza Sage, had declined to implicate her husband in the murder of her child, and that she had sheltered him from prosecution.  It appears further that he made the murder of the child a condition of his marrying her, and that it was to influence him to take her as his wife that she murdered her child.  After she had been for some years in prison the appellant applied for a divorce.  In view of this evidence it was clearly competent for the State to prove when it was that the wife made known her husband's complicity in the crime, although she had previously shielded him.

We do not deem it necessary to prolong this opinion by quoting from the argument to the jury the statements of the counsel for the State to which the appellant's counsel objected; it is enough to say that the court promptly checked the State's attorney, and that his misconduct, if it was misconduct at all, was not of such a nature as to authorize a reversal.  Erroneous inferences from the evidence drawn by counsel and stated in their addresses to the jury, or mistaken opinions of the law expressed by them in such addresses, do not, as a general rule, entitle the complaining party to a new trial.  *Combs* v. *State*, 75 Ind. 215; *Proctor* v. *De Camp*, 83 Ind. 559; *Warner* v. *State*, 114 Ind. 137.

The court refused to give an instruction asked by the appellant, which reads thus: " It will be necessary for the State to prove, beyond a reasonable doubt, that the killing of Harry Albert Cunningham by Eliza Sage was a direct and immediate effect of some act done by her in pursuance of the counsel, command or procurement of the defend-

ant.   The concealment of the knowledge that a felony is to be committed, or tacit acquiescence in its commission, or words that amount to a bare permission to commit a felony, would neither make the defendant an accessory before the fact, nor a principal in the alleged crime." This instruction was properly refused.   It was not necessary, as the instruction erroneously asserts, that the " killing of Harry Albert Cunningham " should have been the " direct and immediate effect of some act " done by Eliza Sage.   If the death resulted from a felonious act of the principal, brought about by the counsels or commands of the accessory, the latter is guilty, although death may not have resulted immediately or directly from the act of either of the wrong-doers.   It is a familiar principle of criminal law that it is not necessary that death should be the proximate result of the felonious act. *Harvey* v. *State*, 40 Ind. 516 ; *Kelley* v. *State*, 53 Ind. 311 ; *Bloom* v. *Franklin Life Ins. Co.*, 97 Ind. 478, and authorities cited p. 486.   Nor is it necessary that the acts or words of the accessory should directly incite or expressly command the principal to commit the homicide ; it is enough if it appears that the acts or words of the accessory were intended to secure the unlawful killing of the deceased, and that they effected that result.

Where the court in one instruction fairly and accurately states the law upon the subject of what constitutes a reasonable doubt, it is not necessary to repeat it in other instructions, nor is the court bound to set before the jury the various definitions that courts or writers have attempted to give to the term " reasonable doubt." If a fair and sufficiently adequate definition of that term is once given, all'is done that the law requires.

The tenth instruction asked by the appellant was properly refused.   It is not the duty of the court to state to the jury the probative effect of facts where different inferences may be drawn from them.

We have given to the questions discussed by counsel full

and careful consideration, but we can find no error in the record which will authorize a reversal ; on the contrary, the record shows that the case was well and fairly tried.

