Judge Wood
delivered the opinion of the court
A record is made of judicial proceedings for the purpose of preserving the evidence of what was transacted for the use and benefit of those interested in these transactions. If,'in making up this^ record, the clerk omit any material fact, which papers on file, or *262 entries,on the minutes or journals of the court, show to have existed, such omission can not prejudice the party further than to put such party to the inconvenience of hunting up the proofs. ■ It is not uncommon, *when the transcripts of the records of inferior courts are certified, upon judicial process, to superior courts, and are found defective, to allege diminution, and issue a pro'cess for a more complete record. In such case, the omitted fact, if found in a proper form, is added to the record, and certified as part of it.
In this case, the omission of the clerk to embody the affidavit, upon which the writ of attachment issued, in the record, does not deprive the party interested of the use of that affidavit. It is properly added to and made part of the proceedings, and shows that the first exception taken by the plaintiffs’ counsel is incorrect in point of fact.
The same principle is applicable to the third exception taken. The journal memorandum of the entry of judgment at November term, 1810, is a minute of what was done, which, upon making up the record, might well be filled up and made complete by inserting in it all that it properly covered. It was, in substance, a judgment upon the auditor’s report as to the amount due. That report is on file, and is referred to in the journal entry, and thus made for the purposes of justice as a part of that entry. We think, therefore, that the first and third exceptions are not sustained by the facts. There was an affidavit of indebtedness and non-residence, and there was such a final judgment as the law contemplated antecedent to the sale of the land.
To sustain the claim of the plaintiffs, it is indispensable that the proceedings on the attachment be regarded as comm non judice, and, therefore, absolutely void, either at their commencement or at the time of the judgment and the order of sale.
The facts necessary to attach jurisdiction at the commencement of the suit were these: the indebtedness of the .defendant, his non-residence, and the actual levy of the attachment upon property owned by him, or in his hands subject to the payment of the debt sued for. Upon the proper existence and showing of these facts the jurisdiction of the court attaches. They are ail shown to have existed in the ease under consideration, consequently the proceedings can not be considered as coram non judice at their commencement.
*263 The second exception taken is that the sheriff did not sign the inventory and appraisement with the freeholders. This is but an irregularity in the intermediate proceedings, *and can neither overreach the jurisdiction already attached nor invalidate the subsequent judgment and order of sale.
The position that the suit should have been brotight against the heirs, and not the administrators, is strongly urged by the plaintiffs’ counsel. If they are right, these proceedings are not maintainable, for the making the proper parties defendants is one of the facts essential to giving the court jurisdiction.
The law under which the suit was brought expressly provided that “in case of a debtor residing out of the state, the writ of attachment, as above provided, may issue against his heirs, executors, or administrators.” The writ of attachment, “ as above provided,” was authorized to bo levied upon “lands, tenements, goods, chattels, rights, credits, moneys, and effects.” In determining whether it should issue against the heirs or against the personal representatives, it was necessary to look at the nature and character of the ¡action to be commenced. By what rule could this be decided? We think by none better than this: were all the parties defendants in the state, against whom should the suit be brought for which the attachment is prosecuted ? In the case stated, the suit in question must have been instituted against the executor or administrator. It could not have been sustained against the heir in the first instance, under the law then in force. We are satisfied the administrators were properly made defendants.
This attachment was commenced in March, 1810. When the act of February 14, 1810, took effect, on the first of June of that year, the case stood upon the return of the property attached<and the appointment of auditors. The new law repealed that under which the attachment issued, and whilst it re-enacted all the provisions of -the repealed law, it contained no saving clause for the protection of suits pending. The plaintiffs’ counsel contend that this repealing law takes away the foundation upon which the attachment was commenced, and rescinds the power of the court to •proceed further in the case; that it leaves nothing for the future action of the court to stand upon. We can not adopt this opinion.
An attachment such as the one in question, though a statutory, is a remedial process. The law authorizing the commencement ,of an attachment for debt, and the proceedings upon it, contains *264 no provisions of a penal character; none more so, certainly, than every law that subjects real estate to be transferred from one person to another upon judicial ^process. ' Where there is no express indication of legislative intention, it is not to be sssumed that it was intended by any new enactment to arrest the regular prosecution of process essentially remedial, and take away the right acquired under it. Possibly it is competent for the legislative power to do this; but it is only to be imputed to them when the language they have employed admits of no other interpretation. Here that is not the case.
The law of 1810 re-enacts substantially all the provisions applicable to the case before us of the law of 1805. The instant one law ceased to have effect, the other came into operation. The rule of proceeding and of property was never changed.
It is remarkable of the enactments of the session of the legislature of 1809-10, that in their revisions of the general laws, at that time, they studiously omitted a saving clause, connected with the repealing clause of the revised laws. The statutory civil code was extensively revised that session. Among the acts necessarily affecting judicial process, then pending, are the following: “An act to provide for the recovery of money secured by mortgage;” an act allowing mutual debts and demands to be set off, and concerning tenders;” “an act for the limitation of actions;” “an act regulating judgments and executions;” “the act allowing and regulating writs of attachment;” “an act directing the mode of proceeding in chancery;” “an act to reduce into one the several acts organizing the judicial courts, defining their powers, and regulating their practice.” Not one of these enactments contain a saving clause to protect suits pending. No question was raised at the time as to their effect upon such suits. The bar and the courts seem to have concurred in the interpretation of the legislature of that day that, in remedial proceedings, such saving clauses were unnecessary. It would be very unsafe for us now to disturb this then universally admitted proposition, upon the authorities of the jurists or of the adjudged cases of other states or countries.
It is very remarkable, too, that there is one law of the enactments of this- session of 1809-10, that contains such a saving clause as is called for by the plaintiffs’ counsel in this case. This is found in the act “levying a tax on land,” and in a proviso to *265 the general repealing clause. By this proviso all penalties incurre'd and prosecutions pending are expressly *saved; And this saving is iu exact accordance with the true principle. The law was penal, not remedial; consequently, the penalty and the suit to recover it would be lost if not saved from the effect of the repeal by legal provision. This shows that the subject was understood by the legislature, in 1810, just as the courts and the profession understood it. To this construction we are bound to conform. And we find no difficulty of principle in doing so.
Note. — The case of Voorhees, plaintiff in error, v. Bank of the United States, 10 Peters, 449, decided in the Supreme Court of the United States, January term, 1836, sustains every position taken in this opinion. The questions raised were originated upon a proceeding in attachment in Hamilton county, Ohio, in 1807 and 1808. — Reporter.
With respect to the amended or corrected record, it is unnecessary to say more than has been said. Whether we obtain the additional facts it contains from it, or from their existence on-the1 files and the'journals or minutes, does not affect the case. We are bound to look to these facts as existing, and to give them the weight due to them, so far as they affect the questions before us.
The judgment must be for the defendant.
Judge Hitchcock, having been counsel for the defendant, did not sit in this case.