## CURRAN v. OWENS.

Decided May 10, 1879.

1879
Special Term.

1. The general rule is, that when an act of the Legislature is repealed without a saving clause, that it must be considered, except as to transactions passed and closed, as if it had never existed.

2. A right of action, which does not exist at common law but depends solely upon statute, falls with the repeal of the statute without a saving clause or a general law saving pending suits, unless that right has been carried into judgment.

3. If pending such action, before there is a judgment, the law, which gives the right to bring the suit, is repealed without a saving clause or such general law as to suits pending, no further step towards judgment can be taken in such suit.

4. Whether such judgment could in the Appellate Court be annulled, on the ground that, after it was rendered, the law giving the right to the action was repealed, is not decideed in this case, as the question does not arise.

5. Whether the Legislature by its repealing act intended to affect suits pending, in the absence of a general law upon the subjcet, must be gathered from the repealing act itself.

6. If the repealing act does not substantially re-enact a section of the law repealed, which gave the right of action, and there is no saving clause as to pending suits and no general law on the subject, the legislative intent is clear that all suits brought upon the repealed act fall, unless carried into judgment.

7. But if the section in the old act, which gave the right of action, is substantially re-enacted in the repealing statute, so that there is no moment of time when the repealed section was not the law, although no reservation is made as to pending suits, the re-enacted section continues in uninterrupted operation ; and suits

brought thereon are saved; but otherwise, as in this case, if not substantially re-enacted.

8. An action was brought under section 6 of chapter 99 of the Acts of 1872-3, judgment was recovered in the county-court, and on writ of error reversed, and demurrer to declaration sustained, and cause retained in circuit court for trial. On the 27th day of February, 1877, the Legislature repealed chapter 99 containing said section 6, without any saving clause as as to pending suits; after this repeal there was a demurrer to the amended declaration. HELD:

The demurrer should have been sustained.

Writ of error and *supersedeas* to a judgment of the circuit court of Ohio county, rendered on the 14th day of July, 1877, in a suit at law in said court then pending, in which Mary A. Curran was plaintiff and Thomas F. Owens was defendant, awarded on the petition of said Owens.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the judgment complained of.

JOHNSON, JUDGE, furnishes the following statement of the case:

On the 25th day of August, 1875, the plaintiff, Mary A. Curran, brought an action under section 6 of chap. 99 of the Acts of 1872–3, against the defendant, Owens, in the county-court of Ohio county; in which action she obtained a verdict and judgment against defendant for $——. To said judgment of the county-court the defendant, obtained from the circuit court of Ohio county a *supersedeas*. On the 12th day of January, 1877, the circuit court heard said *supersedeas*, and was of opinion that there was error in said judgment, and reversed said judgment and set aside the verdict of the jury, and sustained the defendant's demurrer to the second count of the plaintiff's declaration; and the plaintiff desiring to amend her declaration, the said circuit court remanded the case to the rules, with leave to the plaintiff to amend

27

her declaration. The amended declaration filed in the circuit court is as follows:

"STATE OF WEST VIRGINIA, OHIO COUNTY, SCT.:

"*In the County-Court of Ohio County.*

" Mary A. Curran complains of Thomas F. Owens, who has been summoned to answer the plaintiff of a plea of trespass on the case, for that, heretofore, to-wit: on the 13th day of March, 1875, the plaintiff was, and for many years had been, and is at present, the wife of James Curran, and had been for all these years and still was wholly dependant upon the good conduct, frugality and personal labor of her said husband, the said James Curran, for her support; and on the day and year aforesaid, and during all the years aforesaid, he, the said James Curran, had been and was a faithful and devoted husband, and supported, provided for and maintained the said plaintiff by his prudence, frugality and labor ; and the said defend-ant, on the day and year aforesaid, and on many days, and at divers times before and since said day, and before the institution of this suit, at the city of Wheeling, in the said county of Ohio, well knowing the premises, did un-lawfully, wrongfully, willfully and maliciously, sell, give and furnish to the said James Curran, the husband of the plaintiff as aforesaid, intoxicating liquors, to-wit, spirituous liquors, wine, porter, ale and beer, whereby the said James Curran became and was intoxicated and remained and continued intoxicated for a long time, to-wit, for the period of six months then next following ; during all which time, by reason of the said intoxication so caused by the defendant as aforesaid, the said James Curran was unable to attend and did not attend to his usual business and work, which he otherwise could and would have done, and was unable to provide for and did not provide for or support the said plaintiff, which he otherwise could and would have done, and thereby and by reason of said intoxication, so caused by the defendant as aforesaid, he, the said James Curran,

squandered and wasted his time and money and became and was indolent, sick and disordered so that he was unable to and could not and did not, from and after the day and year first aforesaid to the present time, provide for and support or furnish means of support for the said plaintiff; and the said plaintiff, from and since the day and year first aforesaid to the present time, has been unprovided for and destitute by reason of the unlawful acts of the defendant aforesaid, to the damage of the said plaintiff of five thousand dollars.

And on another day, to-wit, on the 13th day of March, 1875, said plaintiff was, and for many yeas had been the wife of James Curran, and had been for all these years dependent upon the good conduct, kindness, frugality and labor of her said husband, the said James Curran, for her support, comfort and consolation; and on the day and year last aforesaid, and during all the years aforesaid, he, the said James Curran, had been and was a kind, affectionate, faithful and devoted husband, and supported, provided for and maintained the said plaintiff by his prudence, frugality and labor; and the said James Curran on the day and year last aforesaid, was in the habit of drinking spirituous and intoxicating liquors and becoming intoxicated; and the defendant well knowing the same, and artfully contriving and willfully intending to injure the said plaintiff and deprive her of the comfort and consolation of her said husband, and of her means of support, did, on the day and year last aforesaid, and at divers and sundry days and times before and since the last mentioned day up to and including the 25th day of August, 1875, at the said city of Wheeling, in the said county of Ohio, unlawfully, wrongfully, wilfully and knowingly, sell, give and furnish to the said James Curran, the husband of the plaintiff as aforesaid, intoxicating liquors, to-wit, spirituous liquors, whisky, brandy, wine, porter, ale and beer, whereby he, the said James Curran, became and was intoxicated for a long time, to-wit, from the day in this count first above mentioned until the 25th

day of August, 1875, during which time, he, the said James Curran, by reason of the said intoxication so caused by the said defendant, beat, wounded and then and there violently beat, kicked, bruised and ill treated her, driving her away from home, and putting her out from shelter, and exposing her to cold and inclement weather both night and day, and this at times when this plaintiff was only partially clad in her usual wearing apparel, in so much that this plaintiff by means of the premises then and there became and was sick, sore, lame, disordered, and suffered great bodily pain, and so remained and continued for a long space of time, to-wit, from the day and year in this count first mentioned hitherto, whereby the said plaintiff, during all that time was deprived of her comfort, good health and enjoyment which she had before this in her domestic affairs and relations, which she might and otherwise would have had, to-wit, at the city of Wheeling, Ohio county aforesaid, and other wrongs to the said plaintiff then and there caused by reason of the intoxication of the said James Curran as aforesaid, to the great damage of the plaintiff of $5,000.00. And thereupon she brings her suit, &c."

On the 23d day of April, 1877, the defendant demurred to the plaintiff's amended declaration and to each count thereof, in which demurrer the plaintiff joined; and the case was continued to a future day of the term.

On the 30th day of April, 1877, the court having heard the arguments upon the demurrer, overruled the said demurrer and set the trial of the case for the 17th of May next.

On the 31st of May the defendant pleaded not guilty; and the cause was thereupon submitted to a jury.

On the 7th day of June, 1877, the jury rendered their verdict assessing the plaintiff's damages at $1,250.00. Whereupon the defendant moved the court to set aside the verdict and award him a new trial, which motion the court took time to consider. On the 14th day of July, the court after mature consideration overruled the

motion for a new trial, and entered judgment upon the verdict. Six several bills of exceptions during the trial were signed by the court, which bills in due form accompany the record. To the judgment entered upon the verdict the defendant obtained a writ of error and *supersedeas.*

Before the demurrer was filed to the amended declaration, the Legislature of West Virginia, by an act passed on the 27th day of February, 1877, entitled "an act to amend and re-enact chapter 32 of the Code of West Virginia, and to repeal chapter 99 of the Acts of 1872-3"; by which the said chapter 99, under which the said action was brought, is expressly repealed, which act went into effect from its passage.

*Henry M. Russell,* for plaintiff in error cited, the following authorities:

4 Moo. & P. 341; 9 B. & C. 750; 14 Eng. Law & Eq. R. 124; 20 Gratt. 220; 7 Wall. 506; 1 Hill 324; 2 Pet. 413; 11 Pet. 539, 540; 8 Pet. 110; 25 Gratt. 19; 3 Burr. 1456; 2 Wall. 450; 13 How. 429; 6 Wend. 526; 15 N. Y. 152; 3 How. Pr. (N. Y.) 142; 35 Barb. 599; 4 Metc. 76; 3 Stewart (Ala.) 387; 8 Mass. 469; 9 Mass. 151; 16 Mass. 59; 3 Metc. 213; 30 Conn. 149; 4 W. Va. 456; Code W. Va. ch. 166; 1 Mich. 150; 6 Shepley (Me.) 109; 61 Ill. 31; 14 Ill. 334; 5 Rand. 657; 5 Cranch 281; 6 Cranch 203; 7 Wall. 454; 26 Me. 453; 53 Me. 496; 34 Me. 14; 36 Me. 62; 11 Ill. 619; 1 Binn. 601; 1 N. H. 61; 32 N. H. 410; 1 Neb. 419; 3 Serg. & R. 590; 4 Serg. & R. 401; 29 Ohio St. 314; 10 & 11 Cin. Sup. Ct. Rep. 480; 11 N. Y. 733; 12 N. Y. 336; *Id.* 530; 9 N. Y. 556; 12 N. Y. 332; 19 Wend. 343; 1 W. Va. 219; *Id.* 477; *Id.* 496; 21 Ohio St. 191.

*J. H. Good,* for plaintiff in error, cited the following authorities:

8 Gratt. 651; Barnes 441: 2 W. Black. 1299; 1 T. R. 11; 1 H. & M. 385; 1 Rand. 39; 11 Leigh 633; 1 R. of

R. 756; 6 Gratt. 219; *Id.* 287; 14 Gratt. 626, 633; 5 W. Va. 380; *Id.* 582; 12 How. 366; 6 Leigh 617; 1 Strange 642; 3 Curries 56; Breese 6; 2 Yerg. 60; 4 Humph. 289; 2 Ohio N. S. 54; 7 Clark 90.

*Davenport & Dovener*, for defendant in error, cited the following authorities:

9 B. & C. 524; Skinner 365; 4 Denio 374, 375; 13 Barb. 393; 4 Barb. 64; Jenk Cent. 283 pl. 6; 11 Paige 403; 1 Hill 325; 2 Hill 238; 7 Johns. 477; 5 Duer 183; 3 Barb. 806; 5 Hill 334; 6 Barb. 328; 10 Wend. 362; 12 Wend. 490; 2 Paine C. C. 517; 21 N. Y. 9; 3 Edw. Ch. 466; 3 N. H. 473; 18 Abb. Pr. 143; 25 How. Pr. 416; 12 N. Y. 202; 2 Gall. 204; 16 How. 275; 15 How. 421; 1 Ohio St. 603; 4 Serg. & R. 401; 2 H. & M. 395; 1 H. & M. 204; 9 Gratt. 247, 251; 20 Gratt. 220; 1 Hill 324; 3 Serg. & R. 590; 7 Ohio 257; 1 Ohio St. 563; 12 W. Va. 337; 4 Oregon 119; 14 Gratt. 24; 37 Wis. 298; 19 Gratt. 522; 26 N. J. Eq. 269; 2 Wall. 450; 4 Metc. 476; 1 Neb. 419; 30 Mich. 492; 28 Mich. 496; 21 Ohio St. 195; 12 N. Y. 336; 9 N. Y. 556; 77 Ill. 381; *Id.* 388; 51 Ind. 487; 29 Ohio St. 314; 12 N. Y. 530; 29 Ohio St. 320; 25 N. Y. 510; 2 Daily 475; 2 Abb. Pr. 390; 1 Taunt. 12; 6 Bing. 561; Graham & Waterman New Trials 249; 9 W. Va. 464; 6 Leigh 615; 5 W. Va. 583; *Id.* 380; 13 W. Va. 158; 14 Gratt. 626; 8 Gratt. 650; 22 Gratt. 947; 5 Conn. 348.

JOHNSON, JUDGE, delivered the opinion of the Court:

This action was brought under section 6 of chapter 99 of the Acts of the Legislature of 1872-3, which section is as follows:

"Every husband, wife, child, parent, guardian, employer, or other person, who shall be injured in person or property or means of support by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her name, severally or jointly, against any person who

shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons ; and any person or persons owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, or who having leased the same for other purposes shall knowingly permit therein the sale of any intoxicating liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly with the person or persons selling or giving intoxicating liquors aforesaid, for all damages sustained, and for exemplary damages; and married women shall have the same right to bring suits, and to control the same and the amount recovered, as a *feme sole*; and all damages recovered by a minor under this act shall be paid either to such minor or his or her parent, guardian or next friend, as the court shall direct ; and the unlawful sale or giving away of intoxicating liquors shall work a forfeiture of all rights of the lessee or tenant under any lease or contract of rent upon the premises where such unlawful sale or giving away shall take place; and all suits for damages under this act may be by any appropriate action in any of the courts of this State having competent jurisdiction ; provided however, that if the property of the landlord be seized or taken for any fine, forfeiture or amercement, by reason of the unlawful acts of his tenant arising under the provisions of this act, such landlord may sue upon the bond required by this act to be given, and may recover thereon damages to the amount incurred and paid by him, together with his costs. But no property belonging to a married woman, infant or insane person shall be taken or seized under the provisions of this act; and in all such cases the husband, guardian, or committee, as the case may be, shall be pecuniarily and personally liable."

The title of this act which contains ten sections is : "An act to provide against the evils resulting from the sale of intoxicating liquors in the State of West Vir-

1879
Special Term.

Curran
v.
Owens.

ginia." This act does not expressly repeal any statute in existence on the subject to which it relates. The 6th section is entirely new, and for the first time in this state gave the right to bring such an action as is therein contemplated. Chapter 32 of the Code of West Virginia was, at the time said chapter 99 was enacted, the general law of the State on the subject of "regulations respecting licenses." On the 27th day of February, 1877, the Legislature of West Virginia, passed an act entitled, "An act to amend and re-enact chapter 32 of the Code of West Virginia, and to repeal chapter 99 of the Acts of 1872–3." Section 16 of this act is as follows:

"Any husband, wife, child, parent or guardian may serve upon any person engaged in the sale of intoxicating liquors a written notice not to sell or furnish such liquors to the wife, husband, child, parent or ward of the person giving such notice; and thereafter, if the person so served with such notice shall, by himself or another, sell or furnish such liquor to the person named in such notice, and by reason thereof the person to whom such liquor is sold or furnished, shall become intoxicated, and while in that condition do damage to another, or shall by reason of such intoxication injure any person in his or her means of support who may have the legal right to look to him therefor, upon due proof that such liquors were sold or furnished as aforesaid and that the person mentioned in such notice was, at the time of the service thereof, in the habit of drinking to intoxication, an action may be maintained by the husband, wife, child, parent or guardian of the person mentioned in said notice, or other person injured by him as aforesaid, against the person selling or furnishing him such liquors, as well as for all such damages as the plaintiff has sustained by reason of the selling or giving of such liquors, as for exemplary damages; and if the person so proceeded against has given the bond and security hereinafter provided for, such suit may be brought, and prosecuted upon such bond against him and his securities therein.

Such a suit may be brought and prosecuted by a married woman in any case wherein the person mentioned in such notice is her husband or infant child, and the damages recovered therein shall be her sole and separate property and governed by the provisions of the Code of West Virginia in relation to the separate property of married women. Where such suit is brought by a guardian, the damages recovered therein shall be the property of his ward."

The last section of said act is as follows:

"That the act passed April 4th 1873, entitled, 'An act to provide against the evils resulting from the sale of intoxicating liquors in the State of West Virginia,' be and the same is hereby repealed."

This last act was passed while this action was pending, and before the demurrer was filed.

The question here presented is: What effect had the repeal of chapter 99 of the Acts of 1872–3 upon this suit, which was then pending? I am informed by counsel for plaintiff in error, that this question was not argued in the court below upon the hearing of the demurrer to the amended declaration, and was not considered by the court in overruling the said demurrer. This question has been very elaborately and satisfactorily argued here by counsel for both plaintiff and defendant in error.

The counsel for plaintiff in error insists, that as there was no saving in the repealing act as to pending suits, after the repeal it was improper to take any further step in the case except to dismiss it; that the repeal of a statute unaccompanied by a saving clause wipes it entirely from the statute-book, and makes it as though it had never existed; that a right of action which did not exist at common law, but depends solely upon a statute, when that statute is repealed, falls with the statute on which it depends.

The counsel for the defendant in error insists, that when a statute imposes a penalty, or a right of action in the nature of damages, for an act done injurious to the rights

of others, such penalty or damages to be recovered by the party aggrieved, is in the nature of a satisfaction to him, as well as a punishment to the offender; and that in such case the plaintiff has acquired a vested right to the penalty as soon as the offense is committed, and a general repeal of the statute, after action begun to recover such penalty or damages, does not affect that right; and that in a case where the damages sustained have been reduced to a judgment once, and the judgment has been set aside, and the case pending for a new trial to be had, the repeal of the statute cannot take away the plaintiff's right to proceed with the case.    He further insists that a right to recover damages is a vested right, which the Legislature could not take away; and further that the right of the plaintiff is protected under the 4th section. of the bill of rights.    He further insists, that the general rule is that no statute is to be construed as designed to interfere with existing contracts, right of actions or suits, and especially vested rights, unless the intention that it should so operate is expressly declared, and although the words of the statute are broad enough to comprehend existing suits, they must be construed as applicable only to cases that may hereafter arise, unless a contrary intention is unequivocally expressed therein.    He contends that the repealing statute is silent as to what effect it is to have on cases pending.    The defendant in error further maintains, that where a statutory remedy for a right created by the statute is repealed, but the repealing statute provides substantially the same remedy, the right may be prosecuted under the repealing statute; and he claims that the statute repealing chapter 99 provided a similar right and remedy to that secured by section 6 of chapter 99.

We will first consider the position taken by the plaintiff in error.

*Regina* v. *The Inhabitants of Denton*, 14 Eng. L. & Eq. 124, was an indictment for the non-repair of a highway.    Between the time of finding the indictment and

plea pleaded, the statute under which the indictment was found was repealed, a judgment was had against the defendant, and a motion made to arrest it, Lord Campbell said: "It is admitted but for the repealed statute the count would be bad, and judgment could not be given upon it. * * The general rule is, that a repealed statute cannot be acted upon, after it is repealed, but that with regard to all matters that have taken place under it before its repeal, they remain valid and cannot be questioned. * * As the law now stands the count is bad and must be so treated, and the judgment arrested. Coleridge J. said: 'At common law the count is bad, and the act which rendered it good has been wholly repealed. Then the question is, whether the fact of the proceeding being in course of process can make any difference; I think not. What has been perfected is not to be disturbed, but if we require the act for any further step, it must be in force at the time.' This is expressed by Lord Tenterden in *Surtees* v. *Ellison.* He says: 'It has long been established, that when an act of Parliament is repealed, it must be considered, except as to transactions passed and closed, as if it had never existed.' That is the correct rule of law upon the subject, and applied to the facts of this case as it was in *Surtees* v. *Ellison,* is quite conclusive here. The *King* v. *McKenzie,* Russ. & R., is to the same effect."

*In Butler* v. *Palmer,* 1 Hill 324, which has been approvingly cited by a number of courts, it was held: "Where a statute repeals a former one which imposed a penalty, the right to the penalty becomes extinguished, even though a prosecution for it has been previously commenced; and if the repeal takes place after conviction, the judgment is thereby arrested. Inchoate rights generally, derived under a statute, are lost by its repeal, unless saved by express words in the repealing statute. It is otherwise in respect to such civil rights as have been perfected far enough to stand independent of the statute; or in other words, such as have ceased to be executory, and have

become executed. Positive enactments are not to be construed as interfering with previously existing contracts, rights of action or suits, unless the intent thus to interfere is expressed in the enactment."

In *Rex* v. *Justices of London*, 3 Russ. 145, 146, a motion was made for a *mandamus* to be directed to the justices, to proceed upon a matter depending before them upon an application regularly made before the repeal of the 46th clause of the act of 1 G. III, ch. 17, by the act of 2 G. III, ch. 2, which application had been duly and *in due* time made by Jane Loury against William Milner, a debtor in their prison, upon the compulsory clause in the former act, *then subsisting* in its full force; and upon such application *all the requisites* had been *complied with* by all the parties concerned; and Milner had appeared and given in a schedule of his effects on oath, and had *assigned* them over for the benefit of his creditors; but the court of quarter-sessions, in whom jurisdiction was thus properly *attached before* the repeal of the cause, voluntarily, and without necessity or sufficient reason and without the desire or consent of any of the parties, *adjourned* the matter till a day which was *subsequent* to the time when the *repeal* of the said compulsory clause *took place.* They urged that as the jurisdiction had was *fully attached* in the justices *whilst* the said clause *subsisted,* and as the parties concerned had exactly *complied with all requisites,* and as the prisoner had sworn to his schedule, and *actually assigned* his effects for the benefit of his creditors, and thereby *divested* himself of his *all,* and rendered himself *subject to felony* if forsworn, it would be hard upon all the parties, if the *repeal* should be construed as meant to *include this case*; but particularly hard upon, and exceedingly injurious and cruel to the *prisoner,* if he should not after all this be entitled to his discharge out of prison. Therefore they insisted that the repeal did *not extend* to this case, according to the true intention of the Legislature. And it would be contrary to law and justice, that the *act of a court* should

work a *wrong to a party.* The jurisdiction was fully attached in the court of quarter-sessions upon the appearance of all the parties on the 26th of September and their complying with all requisites. Then the said sessions adjourned it to the 19th of October, which was still within time ; for the repeal takes place only from and after the 19th of November, (1761) ; and all the parties then attended, and *had done everything* incumbent upon them. But on the 19th of October, 1761, the Lord Mayor declared, that he had promised one Webster, an attorney concerned against Milner, "that Milner should not be discharged *that day.*" Whereupon the court of sessions *remanded* Milner, and then the repeal took place. But as this was the act of the *court,* they ought to *proceed* to do all subsequent acts, and *complete* the jurisdiction *once attached* in them.

But Lord Mansfield was very clear, and *all* the rest of court concurred with him, "that *no* jurisdiction *now* remained in the sessions." He further said : " Great inconveniences were found to arise from the compulsory clause. The Legislature had the whole affair under their consideration,. and they have not thought fit to *reserve* any jurisdiction to the justices after the 19th of November 1761. Their words are : ' that *from and after* that day so much of the former act as relates to creditors compelling prisoners charged in execution to deliver up their estate, and to such prisoners *being thereupon discharged,* shall be and the same is hereby *repealed* to *all* intents *and purposes whatever.'* * * * Therefore whatever may be the hardship of this particular case, we have *no foundation* to support our issuing such a *mandamus* as is prayed." The motion was denied.

I have set out the circumstances of this case to show that whatever hardship might result from the repeal of the law without a reservation as to pending suits, that the rule that under such repeal the pending suit falls, is regarded by the English courts as inflexible.

Brown, J., in *Curtis et al.* v. *Leavitt,* 15 N. Y. in discuss-

ing the effect of a repealing statute, says at page 152 : " Nor . does the construction which makes the law restropective, render it void.    That depends upon its effects, whether . it impairs obligations, or takes away vested rights.  Every right resting in perfect obligation is vested, and cannot be disturbed; but rights arising under a statute, which are imperfect and inchoate, cannot claim any such immunity.   For example, the right given to redeem under the statute of executions was held to be taken away by the repealing act, passed subsequent to the time when the right to redeem accrued.  ·The People v. Livingston, 6 Wend. 526 ; The People v. Townsey, 5 Denio 70.   The general rule of the common law is, that a statute shall be so construed as not to have a retrospective operation.  I Black Com. 45 ; Bacon Abr. Statute C. ; Sackett v. Andross, 5· Hill 327 ; Palmer v. Conly, 4 Denio 374."

In Butler v. Palmer, 1 Hill 324, where most of the authorities are referred to, Mr. Justice Cowen says :   "A number of cases·have been cited by the counsel for the defendant, and some very strong ones, to show that any enactment of the Legislature annulling contracts, or creating new exceptions and defenses, shall be so construed as not to affect rights of action existing at the time of the enactment.   Cases were also cited to show that a statute, in any way modifying the remedy of a party by action, shall never be so construed as to affect actions before the statute. · But these are all cases relating to positive enactments ; none of them arose upon a repealing clause.  *   *   * 'The amount of the whole comes to this, that a repealing statute is such an express enactment, as necessarily divests all inchoate rights which have arisen under the statute which it destroys. These rights are but incident to the statute, and fall with it, unless saved by express words in the repealing clause.'  *  *  *  Chief Justice Savage in delivering the opinion in The People v. Livingston, indicates the rule in the following words:  'For instance, the present statute prohibits gaming, and allows an action to be

brought to recover back money won at play. An action is brought and ready for trial; the day before the judgment the Legislature repeal the act; the suit dies because the court has no jurisdiction, and the party has no right to recover the money. Such right did exist subject to the contingency of obtaining a judgment, and such jurisdiction too existed, but both have been taken away, because the means of enforcing the right no longer exists.'"

Parker, C. J., in *Springfield* v. *Hampden*, 6 Pick. 501, said: "The position that any thing done under a statute while in force remains valid, though the statute may be afterwards repealed, is undoubtedly true; but goes no further than to render valid things actually done; but when the things themselves are merely preliminary, the principle does not authorize a further proceeding in order to render them effectual. There is no such thing as a vested right to a particular remedy."

In *Williams* v. *Inhabitants of Middlesex*, 4 Metc. 76, it was held that "The repeal of the law, which directed the surplus proceeds of the labor of convicts in houses of correction should be paid to them on their discharge, took away the authority to pay the proceeds of labor done before the repeal to those who were not discharged until after the repeal."

In *Dale* v. *The Governor*, 3 Stewart (Ala.) 387, it was held that "The Act of the 15th of December, 1821, conferring a military title and settling an annuity for life upon Samuel Dale for services rendered and losses sustained in the Creek war, as set forth in the preamble thereto, was an act of ordinary legislation, and created no obligation or contract on the part of the State, nor vested any interest in the annuity until paid," and that "It was entirely competent for the Legislature to repeal said statute of 15th December, 1821, at any subsequent session; and the act of 31st of December, 1823, repealing the same as to the annuity was not unconstitutional."

In *Commonwealth* v. *Duane*, 1 Binn. 601, it is shown

that an act of the assembly directed, "That from and after the passing of the act no person shall be subject to prosecution by indictment" for a particular offense at common law, it was held, "that the act puts an end to the prosecution for that offense, commenced and carried to conviction before the passing of the act, but in which no judgment had been pronounced."

In *Crawford* v. *Halsted and Putnam,* 20 Gratt. 211, it was held that, "where a deposition of a party to be read in a pending cause has commenced before the passage of the act of March 2d, 1866, session Acts of 1865–6, p. 86, which required that parties should testify *ore tenus,* but it was not completed until that law went into effect, that the deposition was inadmissible." And further, "that inchoate rights derived under a statute are lost by a repeal of the statute before they are perfected, unless they are saved by express words in the repealing statute."

It is unnecessary to multiply authorities upon the question involved. Many pertinent ones cited by the counsel for plaintiff in error might be referred to. There seems to be no conflict in the authorities. I have carefully examined those cited by the counsel for defendant in error; and there is but a single one, that seemingly denies the general rule; and that does not deny, but sustains it. That case is *Woart* v. *Winnie,* 3 N. H. 473. The syllabus is: "An act of the Legislature repealing a statute of limitations is, with respect to all actions pending at the time of the repeal, and which are barred by the statute, a retrospective law for the trial of a civil cause, repugnant to the Constitution of this State and wholly inoperative." The clause of the Constitution referred to is: "Retrospective laws are highly injurious, oppressive and unjust. No such laws, therefore, should be made either for the decisions of civil causes, or the punishment of offenses."

We think it well settled, that the general rule is that, when an act of the Legislature is repealed, it

Syllabus 1.    must be considered, except as to transactions *past and*

*closed,* as if it never existed. *Ex parte McCardle,* 7 Wall. 1879 Special Term.
514. And that a right of action, which does not exist Curran v. Owens.
at common law, but depends solely upon statute, falls
with the repeal of the statute without a saving clause, Syllabus 2.
unless that right has been carried into judgment. That
if pending such action, before there is a judgment, the Syllabus 3.
law which gives the right to bring the suit is repealed
without a saving clause as to suits pending, no further
step towards judgment can be taken in such suit. But
if there had been a final judgment in the inferior court,
whether such judgment could in the Appellate Court
be annulled, on the ground that after it was rendered Syllabus 4.
the law giving the right to the action was repealed, we
will not decide in this case, as that question does not
here arise. The general rule we conceive to be right,
and to be founded in reason. ·One Legislature might
give a right of action in certain cases, thinking that it
would be good policy; but it might turn out upon the
practical operation of the statute, that it would work
harshly and unjustly; and if such were the fact, it
would be strange indeed, if the next Legislature could
not be benefited by such experience, and' proceed as
early as possible to remedy the evil, by a repeal of the
law; and if it was convinced that the evils were such,
that it should prevent judgments in cases already pend-
ing, it has the undoubted right, by refusing to append a
clause saving as to pending suits, to say that nothing
further shall be done under the repealed statute.

It may be said that this rule operates harshly upon
those who have brought suits and incurred costs. Such
persons had notice when the new right was conferred
upon them, that the same power that conferred it had
the right at any time to take it away. They chose to
bring their suits and risk the action of any future legis-
lation. I do not wish to be understood as applying the
above reason to the case at bar, but I am speaking of the
reasons that lie at the foundation of the general rule we
have recognized.

Whether the repealing statute shall have the effect to stop proceedings in pending cases depends upon the intent of the Legislature. It is unrestrained except by constitutional barriers; and when the intent of the Legislature is clear that the repeal is intended to affect pending suits, they will be so affected. And, as we have seen, that intent can not be expressed more clearly, than by wholly repealing the statute that gives the right of action, without a saving clause as to rights accrued, or pending actions. Numerous authorities have been cited by counsel for defendant in error, among them *Tenant* v. *Brookover*, 12 W. Va. 337, laying down the correct rule of law, that " It is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." These authorities refer to positive enactments, and can have no application to this case. The general rule we have laid down must govern this case, unless it is brought under some exception thereto.

It is claimed by the counsel for defendants in error, that it takes away a vested right of the plaintiff. I shall not go into a discussion in this case as to the definition of "vested rights," or how far such rights may be interfered with by legislative enactments. It is clear to my mind from the authorities we have cited, and from reason, that the right created by statute to bring a suit for damages for a wrong cannot be, and is not, such a vested right that the Legislature cannot take away by the repeal of the statute.

It is also claimed by counsel for defendant in error, that the rights of the defendant in error are fully protected from the effect of the repeal by Art. III, §4, of the Constitution. No part of said section could possibly have any application to the case, except the last clause which is : "No bill of attainder, *ex post facto* law, or law impairing the obligation of a contract, shall be passed." This clause can certainly have no application whatever to this case, because it cannot be pretended that there was any *contract* between the plaintiff and defendant. It was a suit for damages, for a wrong inflicted.

It is also claimed for defendant in error, that she is protected from the effect of the repealing statute by the judgment recovered in the county-court. But that was no protection, whatever might have been the effect if the judgment had been affirmed by the circuit court before the repeal of the statute, which we do not decide, as it does not arise in this case, the effect of the reversal in this case was to completely annul the judgment, and to put the case precisely where it was before the judgment was rendered.

It is insisted by counsel for defendant in error, that chap. 107, the repealing law, is unconstitutional, because two objects, as is claimed, are embraced in the title, while section 39 of art. III of the Constitution declares, that "no act hereafter passed shall embrace more than one object, and that shall be expressed in the title." Haymond J., in declaring the opinion of the court in *State* v. *Cain*, 8 W. Va. 733, speaking of the rule as to statutes on a certain subject, quotes approvingly the following rule laid down by Dwarris : "It is theretofore an established rule of law that all acts *in pari materia* are to be taken together, as if they were one law ; and they are directed to be compared in the construction of statutes, because they are considered as framed upon one system and having one object in view." There was but one object, in the bill, and that was to "amend and re-enact chapter 32 of the Code, of West Virginia," and in doing that it was entirely competent for the Legislature, to expressly repeal ch. 99, which was a part of the law on the same subject; and inserting in the title of the act, "and to repeal chapter 99 of the Acts of 1872–3," did not make the object double.

It is also insisted by counsel for defendant in error, that the said chap. 107, subsequently, in section 16, re-enacted section 6, of chap. 99 of the Acts of 1872–3, and that there never was a moment of time when it was not in operation, and that therefore the repeal of the chapter did not affect suits that were pending under said section

Syllabus 6.

Syllabus 7.

6. It was held in *Ely* v, *Holton*, 15 N. Y. 594, that "the effect of an amendment of a statue made by enacting that the statute 'is amended so as to read as follows,' and then incorporating the changes, or additions, with so much of the former statute as is retained, is not, that the portions of the amended statute which are merely copied, without change, are to be considered as having been repealed and again re-enacted, nor that the new provisions or the changed portions, should be deemed to have been the law at any time prior to the passage of the amended act. The part that remains unchanged is to be considered as having continued the law from the time of its original enactment; and the new or changed portion, to have become law only at and subsequent to the passage of the amendment." To the same effect is *Moore* v. *Mausert*, 45 N. Y. 332,

In the case before us, the act was in terms repealed ; but it is contended that section 6 is substantially re-enacted. In *Mitchell* v. *Eyster*, 7 Ohio 257, it appeared that the law, under which the attachment was sued out, pending the suit was repealed ; but the repealing law re-enacted all the provisions of the repealed law, without any saving as to pending suits. The court said by Wood, J.: "Where there is no express indication of Legislative intention, it is not to be assumed that it was intended by any new enactment to arrest the regular prosecution of process essentially remedial, and take away the right acquired under it. Possibly it is competent for the legislative power to do this; but it is only to be imputed to them, when the language they have employed admits of no other interpretation. Here that is not the case. The law of 1810 re-enacts substantially all provisions applicable to the case before us of the law of 1805. The instant one law ceased to have effect the other came into operation." The court held that the suit did not abate.

In *Knoup* v. *The Piqua Bank*, 1 Ohio St. 603, it was held, that " where a statutory remedy for a right created by that statute is repealed, but the repealing statute pro-

vides a substantially similar remedy, the right may be prosecuted under the repealing statute."

In *Fullerton* v. *Spring*, 3 Wis. 588 it appeared that " the statute of the territory provided, among other things, that ' bills for relief, in the case of the existence of a trust, not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after.' By the revised statutes of the State, which went into operation on the 2d day of January, 1850, this provision was re-enacted in the same words, and the territorial statute was repealed, the enacting and repealing statute taking effect at the same time." It was held that the provision was continued in force without interruption. *Crower* v. *The City of Milwaukee et al.*, 18 Wis. 270. To the same effect, *Middleton* v. *N. J. West Line R. R. Co.*, N. J. 269.

In the case of *State* v. *Gumber*, 37 Wis. 298 Cole, J., after reiterating the principle declared in *Fullerton* v. *Spring* said : "We cannot perceive that it makes any difference whether the statute be a civil or penal one ; for it is wholly a question of legislative intent, which is as manifest and clear in the one case as the other. That intent is to make no change in the existing law, by its repeal and re-enactment in the same statute."

In *Steamship Co.* v. *Joliffe*, 2 Wall. 450 the suit was to recover half pilotage fees under a statute of California. While the case was pending the Legislature of California passed a new statute on the subject of pilots, and pilot regulations for the port of San Francisco, *re-enacting in substance the provisions of the original act*, but at *the same time in terms repealing that act*. The plaintiff recovered in the court below, the justices court of California, which judgment in the highest court of California was affirmed ; upon writ of error it was taken to the Supreme Court of the United States. A new point arose in this Court, as the report shows. It being suggested that the constitutionalty of the statute of California would be

called in question, a decree was suspended until the State of California could be represented. The attorney of the State appeared and filed a brief. After the action of the court below the repeal took place. Seven judges sat in the case. The judgment of the court below was affirmed, three of the judges dissenting.

. The opinion of the court was delivered by Justice Field. On page 458 he says: "It is clear that the Legislature did not intend by the repealing clause in the act of 1864, to impair the right to fees which had arisen under the act of 1861. The new act re-enacts substantially all the provisions of the original act, relating to pilots and pilot-regulations for the harbor of San Francisco. It subjects the pilots to similar examinations, it requires like qualifications, it prescribes nearly the same fees for similar services, and it allows, half pilotage fees under the same circumstances as provided in the original act. * * * The new act took effect simultaneously with the repeal of the first act. Its provisions may therefore more properly be said to be substituted in the place of, and to continue in force with modifications of the provisions of the original act, rather than to have abrogated and annulled them." In opposition to this view Mr. Justice Miller, who delivered the dissenting opinion, said : " But it is said that although the act of April 4, 1864, repeals the prior act, it re-enacted the same provisions on the subject of pilots, and that this operates as a continuance of the former law. It may be answered, if such were the intention of the framers of the new law, the repealing clause is not only useless, but, if effectual, it must operate to defeat that intention. In the next place the appropriate and usual mode of expressing such an intention is by a saving clause ; and lastly by a well settled rule of construction the new statute can have no retrospective operation, unless by its own express language or by necessary implication, neither of which exists in this case."

It seems to me that the rule laid down by Justice Field for the court is just and reasonable and forms a well defined exception to the general rule. If section 6 of the Acts of 1872–3 is substantially re-enacted in section 16 of chapter 107 of the acts of 1877, then I am of opinion, notwithstanding the repealing clause, that it was not the intention of the Legislature to repeal section 6. They might very well intend that the repeal should act upon all the matters in said chapter 99, not substantially re-enacted in chapter 107. As it is a question wholly of legislative intent, if the Legislature has re-enacted by the repealing act substantially any section giving a right of action, we will not assume that the Legislature intended under those circumstances to do injustice to parties who had suits pending under said section, thus incorporated in the new act, by causing their suits to be dismissed, when there was no change in the policy of the State as to the bringing of such suits. But reasonable and just as this position appears, it has been opposed not only by the three dissenting judges in *Steamship Company* v. *Joliff,* but in the cases I have found in Maine; and perhaps elsewhere.

In *Coffin* v. *Rich,* 45 Me., it was held, "That where an act of the Legislature is repealed and is re-enacted with some changes at the same time, both statutes may properly be taken into consideration, in giving a construction to the latter; but the act repealed has no force whatever, only so far as it is continued in force by saving clauses and exceptions."

In *Gaul* v. *Brown,* 53 Me. 496, it is held, "that a penal action cannot be maintained after the repeal of the statute creating the penalty sought to be recovered, although the repealing statute creates a similar, but a less penalty."

I am of opinion however, that the *repeal* does not affect suits brought under section 6 of chap. 99, if that section was substantially re-enacted by the repealing act, so that there was no moment of time, when said section 6 was not law.

Was section 6 of chap. 99, substantially re-enacted by chap. 107 of the Acts of 1877?

Counsel for defendant in error insists that it was, and says the only difference, is that section 16 of chap. 107, which he claims takes the place of section 6 of chap. 99, requires notice to be given to the saloon keeper or other person furnishing liquor. This is not the only difference. But suppose it was. Is this not a most radical difference? Under section 6, of the old law, it made no difference whether the party injured gave notice to the liquor-seller, or not, he was liable for all the damage he inflicted without such notice. Under section 16 of the new act no suit will lie at all, unless the notice is given. The language is: "Any husband, wife, parent or guardian, may serve upon any person engaged in the sale of intoxicating liquors a written notice not to sell or furnish such liquors to the wife, husband, child, parent or ward, of the person giving such 'notice, and thereafter, if the person so served with such notice shall by himself or another sell or furnish such liquors to the person named in such notice, and by reason thereof the person to whom the liquor is sold or furnished shall become intoxicated, and while in that condition do damage to another, or shall by reason of such intoxication injure any person in his or her means of support, who may have the legal right to look to him therefor, *upon due proof that such liquors were sold or furnished, as aforesaid, and that* the person mentioned in said notice *was at the time of the service thereof in the habit of drinking to intoxication,* an action may be maintained, &c." Section 16 makes the "*person* engaged in *the sale of intoxicating liquor*" liable, after notice in writing given, for damages caused to the person mentioned in the notice, if such person at the time of the service of the notice "*was in the habit of drinking to intoxication.*"

Sec. 6 of the old law gave a right of action to any one injured "*against any person who shall by selling or giving intoxicating liquors, have caused the intoxication in whole*

*or part of such person or persons." The words in whole or part* are entirely omitted, from the new section. Section 6 gave a right of action against the landlord, under certain circumstances; this is not in the new section, at all. There are other material differences which I will not now point out; I have pointed out enough to show, that the two sections are not substantially alike, but radically different. The old law seems to have been enacted to protect the innocent from the effects of the liquor traffic as far as possible, by making any one, who would sell or give away liquor liable to the party injured for " in whole or part" causing the intoxication; section 16 seems to have the effect of shielding the saloon-keeper from the injuries he was likely to suffer under section 6 of the old law, by not making him liable at all, for any lawful selling, and not for any *unlawful* selling to any one, except " he was in the habit of drinking to intoxication."

There is very little in common in the two sections; and the Legislature having repealed section 6, pending this suit, without any saving clause, hard as it seems upon the female plaintiff in the court below, there is no help for her case, and it must fall. There are many other interesting questions in this case not necessary to discuss, as they could be of no practical value, as the case will have to be dismissed.

For the foregoing reasons, the judgment of the circuit court of Ohio county must be reversed with costs to the plaintiff in error, and the verdict of the jury set aside; and this court, proceeding to render such judgment upon the demurrer to the amended declaration, as the said circuit court should have rendered, it is ordered that said demurrer be sustained, and it appearing to the court that the declaration cannot be so amended as to give the plaintiff a cause action, it is further ordered that this action be dismissed at the costs of the plaintiff.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.